Isaac Joseph, doing business, under the name and style of Isaac Joseph Iron Company, appellant, *v.* J. H. Richardson, doing business under the name and style of J. H. Richardson & Co.

*Contract arising from correspondence—Meeting of minds.*

Where negotiations resulting finally in an order for a delivery of goods have been conducted by telegrams and letters, the point where an obvious meeting of minds has been arrived at must govern the resulting contractual obligations and be referred to in construing the correspondence as culminating in a contract of sale.

*Contract—Express warranty of quality—No special form requisite.*

Plaintiff contracted to deliver and defendant promised to pay for rails of a particular grade and quality, known in the market as "first class A No. 1." The defendant had endeavored to secure to himself by the terms of the contract the thing he wanted, and had so secured himself under the rules of fair dealing which a layman would suppose ought to

govern such a transaction. *Held,* (1) that the delivery of rails of inferior grade and quality is in violation of the contract and a breach of an express warranty to constitute which no special form of words is requisite.

*Contract*—" *Warranty of species* " *distinguished from* " *seller's representation.*"

All the authorities agree that there is an implied warranty that an article to be delivered shall correspond in specie with the commodity sold, and the words " first class A No. 1 " as applied to rails may be as essentially descriptive of the thing contracted for as the word " iron " or " steel." Such a case is clearly to be distinguished from the class of cases in which it is held that a warranty is not implied from mere representations of a seller in praise of his wares.

*Contract—Measure of damages for inferior article retained.*

Where an article has not been returned the measure of damages ordinarily is the difference between the value of the article delivered and the value of the article agreed to be delivered, but a vendee cannot recover the expenses incident to his adjustment of differences between himself and another to whom he had made a resale of the goods in controversy.

*Contract—Breach of—Inferior quality—Damages—Question for jury.*

Stress of circumstances may compel a man to use an article which is not up to the standard contracted for nor reasonably fit for use, but the fact that rails purchased could be and were so used by vendee is not conclusive of the question whether they were reasonably fit for use; and the question of vendee's damages may be left to the jury to determine, there being evidence sufficient to warrant a jury in finding (1) that the goods delivered were not as purchased but of a much inferior grade and (2) what, if any, damages resulted from such inferior quality of the goods.

*Practice, Superior Court—Correction of judgment as to damages.*

Where the trial judge has committed an error in permitting consideration of an item of damages which should not have been submitted to the jury, such error does not require a reversal of the judgment; it can be corrected by deducting the amount erroneously allowed.

Argued April 8, 1896. Appeal, No. 83, April T., 1896, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1895, No. 198, on verdict for defendant, finding him entitled to a certificate. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed. WICKHAM, J., dissenting.

Assumpsit to recover $747.07 upon an accepted seven days sight draft for rails sold. Before MAGEE, J.

Verdict for defendant, finding him entitled to a certificate for $209.34.

The following facts appear from the pleadings and evidence.

The plaintiff, a dealer in old rails, scrap iron, etc., sold defendant, an iron and steel broker, certain iron relaying rails, and suit was brought on an accepted seven day's sight draft for $747.07 given in payment. The contract out of which this litigation arose consists of a series of letters and telegrams which passed between the parties, and turned upon the question whether the rails were sold as " all A No. 1 " and " first class." These telegrams and letters are sufficiently set out in the opinion of the Superior Court in its discussion of what the contract was at the time of the meeting of the minds of the parties. The rails were used by defendant. Vendee defended on the ground of damages incurred by the rails not being as represented either as to quality or species.

The trial judge ruled that the goods were not the articles purchased if they were not first class A No. 1 relaying rails; and admitted, under objection, certain offers of evidence tending to establish such fact. Such admissions of evidence and the instructions of this court on this point were assigned for error (1–9).

Plaintiff's points were, inter alia, as follows:

1. The defendant cannot resist payment of the draft in suit, and cannot claim any set-off to the same on account of the alleged unfitness of the iron relaying rails, without proof of a warranty or fraudulent representation as to their quality. A mistaken or false representation of the quality is not sufficient of itself to amount to a defense.

2. A mere representation that the rails were relaying iron rails A No. 1 did not constitute a warranty, and is no defense to the payment of the whole amount due upon the draft, unless such representation was both fraudulent and false.

6. The verdict must be for the plaintiff for the full amount claimed upon the accepted draft, with interest thereon from August 17, 1894, to date of trial.

Defendant's points were, inter alia, as follows:

1. Plaintiff having agreed to sell to defendant sixty-six tons of first class thirty-five pound relaying iron rails, fit for the purpose for which they were purchased, and A No. 1, never having been run over, if the jury believe from the evidence that the rails delivered by plaintiff to defendant were not first class,

thirty-five pound relaying iron rails, or were not fit for the purpose for which they were purchased, or were not A No. 1 relaying iron rails, the defendant is entitled to set off the damages he suffered by reason thereof.

2. If the jury believe that said rails delivered were not first class thirty-five pound relaying iron rails, fit for the purpose for which they were purchased, and not A No. 1, then the defendant is entitled to recover the difference between the value of such rails as were sold, and the value of the rails delivered, less whatever amount defendant received thereon.

3. If the jury believe that said rails delivered were not first class thirty-five pound relaying iron rails, fit for the purpose for which they were purchased, and not A No. 1, defendant is entitled to recover the amount of his reasonable expenses and outlays incurred in preventing greater loss than that suffered by him on account of the breach of warranty by said plaintiff.

4. If the jury believe from the evidence that the amount of damages suffered by defendant is greater than the amount claimed by plaintiff, then the defendant is entitled to a certificate in his favor for the difference and a verdict in his favor for such amount.

*Errors assigned* were, (1–9) admissions of evidence tending to show that the goods delivered were not " A No. 1 and first class," were not the articles purchased, and instructions of the court on this point; (10, 11, 12) refusing plaintiff's first, second and sixth points; (13, 14, 15 and 16) affirming defendant's first, second, third and fourth points, reciting said points and answers.

*S. Duffield Mitchell*, for appellant.—Under the authorities the facts in this case do not constitute a warranty: Hogins v. Plympton, 11 Pickering, 97; Summers v. Vaughan, 35 Ind. 323; Groetzinger v. Kahn, 165 Pa. 578; Shisler v. Baxter, 109 Pa. 443; Selser v. Roberts, 105 Pa. 242; Towell v. Gatewood, 2 Scammon (Ill.), 22; Whittaker v. Eastwick, 75 Pa. 229; Fraley v. Bispham, 10 Pa. 320; Ryan v. Ulmer, 108 Pa. 332; Ulmer v. Ryan, 137 Pa. 309; McFarland v. Newman, 9 Watts, 55.

*A. Leo Weil*, with him *C. M. Thorp*, for appellee.

OPINION BY RICE, P. J., July 16, 1896:

1. The proof of the contract out of which this litigation arose consists wholly of letters and telegrams which passed between the parties. The plaintiff, who is a dealer in old rails, scrap iron and metals at Cincinnati, made an offer to the defendant, who is an iron and steel broker at Pittsburg, to sell him eighty tons of thirty-five pound relaying iron rails with splice bars attached, for $19.00 per ton at Cincinnati, subject to demand draft with bill of lading attached. On July 24, 1894, the defendant telegraphed in reply to this offer: " Ship the relayers to Jacksonville, Fla., and secure us the lowest rate of freight. Our conditions are for quick shipment. Particulars by letter." On the same date the plaintiff replied: " We have your telegram of even date and await your further commands in regard to the iron relayers." We quote these telegrams in full, because it is earnestly argued by the plaintiff's counsel that the defendant's telegram completed the contract, and that any assertion of quality by the plaintiff afterwards, even if it would amount to a warranty had it been made earlier, could not be enforced as a warranty then, because not being a part of the original contract of sale it was based on no consideration. The cases cited sustain the proposition that the warranty must be upon the sale, and that any subsequent or collateral contract of warranty must arise from an express promise to warrant, and that upon a new consideration distinct from that of the sale itself: Hogins v. Plympton, 11 Pick. 97; Summers v. Vaughan, 35 Ind. 323. It is not necessary to discuss this general rule or the exceptions to it, for it is manifest that it can apply only to a case where the contract is complete, where there has been a full meeting of minds upon all the terms of the contract. To constitute a contract the acceptance of the offer must be absolute and identical with the terms of the offer. If one offers another to do a definite thing, and that other person accepts conditionally, or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or it is in effect a counter proposal. This is elementary law. Now two things are apparent; first, that the defendant's telegram did not contain all the terms and conditions upon which he accepted the plaintiff's offer; second, that the plaintiff did not understand that it did. They were contained in the letter

which was referred to in the telegram, and which the plaintiff awaited. The letter is to be read as if it were a part of the telegram. The two taken together show the terms and conditions upon which the defendant was willing to take the rails. In his letter of the same date the defendant says amongst other things : " Of course we understand these are first class relaying rails and that splice bars are with them. If this arrangement is not satisfactory let us know, but we count on your rails, as we have taken the order. Please hurry the shipment forward as soon as possible." This was the same as saying : " I accept your offer understanding, or upon condition, that they are first class relaying rails." If the plaintiff did not understand his offer in the same way, or if he was not willing to be bound by the defendant's construction of it, or to accede to the latter's terms, treating them as a new proposal, he should have said so. It is said that he might have kept silent and then he would not have been bound by anything contained in the letter. We do not agree to this. Silence under such circumstances would have been equivalent to express assent. The law will not allow a man to make or accept a promise which he knows that the other party understands in a different sense from that in which he understands it himself. But the plaintiff did not keep silent. He wrote in reply : " The rails are all A No. 1 and we have just sold a few days back some of them to a railroad company who were highly pleased with them." Then as if to provide against a contingency to which we shall hereafter refer, he says : " We beg to say that, although we do not anticipate any trouble, we wish to advise you that we will not allow ourselves to be held for any difference your party may find or claim ; we know the rails that we are giving you and that they are first class." Here was introduced something into the negotiation that had not been mentioned before, and on the following day the defendant replied : " Replying to your favor of the 25th we note that you say the rails are A No. 1. These people are not hard to please and we are sure if the rails are as you state there will be no complaint, but we want good rails, as we had hard work to get them to take iron, they preferring steel. . . . It is a mining company and if we give them satisfaction they are going to lay considerable more track and we have a good show to get the orders." This gave the plaintiff distinct notice

that the rails were being bought for use and that it was highly material to the defendant that they should be of the kind and quality represented. The plaintiff then replied: " We know the rails to be No. 1, but if there is anyone whom you would like to inspect the rails, it is satisfactory to us." Then, as if for the purpose of showing that inspection would be needless he continues : " They have never been run over, but have been lying awaiting to be laid for some time when the street car company decided to use a heavier section." The defendant did not inspect or have them inspected and subsequently the plaintiff shipped sixty-six tons of rails to Florida as directed.

This is an action on a draft for $747.07 drawn for part of the price and accepted by the defendant, before he was informed that the rails were not of the kind and quality represented and contracted for in the foregoing negotiations.

In determining what the terms of the contract were we are of opinion that the whole of this correspondence should be taken into consideration but, at all events, it is very clear that it was not a fully completed contract when the defendant's telegram of July 24th was sent and received. The letter following it and the plaintiff's reply are part of the negotiations which led up to the contract and are not mere gratuitous assertions made afterwards. Thus viewing the evidence we hold that the learned judge was clearly right in instructing the jury that " the terms of sale agreed upon by the parties was that the plaintiff was to furnish to the defendant sixty-six tons of thirty-five pounds to the yard, A No. 1, first class relaying rails on board cars for shipment to Ocala, Florida, and it was understood by all that they were to be used in laying track for a railway, and were not for scrap."

2. Having ascertained what the contract was, let us inquire whether there was a breach. As we have seen, the plaintiff delivered iron rails which were used, therefore, it is argued that they were reasonably fit for the use for which they were purchased, and that the jury should have been so instructed. This does not follow. Stress of circumstances may compel a man to use an article which is not reasonably fit for use. There was evidence that the defendant's vendee was under such compulsion. But however that may have been, the fact that the rails could be and were used is not conclusive of the question

whether they were reasonably fit for use. There was ample evidence to warrant a jury in finding—if under the law the question was to be submitted to them—that the rails were not A No. 1 or first class relaying rails, but were of a much inferior grade, indeed that they were not reasonably fit for use. It is claimed that this was a mere representation of quality and not a warranty; and that therefore in the absence of fraud the defendant was not entitled to damages.

It may be conceded that in the sale of a chattel there is no implied warranty of quality, i. e. the goodness of the thing. The purchaser must use his own judgment, or if he is not willing to use his own judgment, he must see that the terms of the contract secure to him what he wants. If the subject of this contract had been simply iron relaying rails there would have been no implied warranty that they were first class relaying rails. But the plaintiff promised to deliver and the defendant promised to pay for iron relaying rails of a particular grade and quality, known in the market as first class or A No. 1. The defendant endeavored to secure to himself by the terms of the contract the thing he wanted. To say that the terms of this contract were complied with by the delivery of rails of an inferior grade and quality is to ignore the rules of fair dealing which a layman would suppose ought to govern such a transaction, and which fortunately do govern according to numerous decisions of our courts in well considered cases. In Warren v. Phila. Coal Co., 83 Pa. 437, Mr. Justice WOODWARD, after commenting on the common law rule that there is no warranty of quality implied in the sale of a chattel, said : "Nothing in the common law rule on this subject stands in the way of a contract stipulation as to quality. between a vendor and purchaser. . . . To constitute an express warranty no special form of words is requisite. The word warrant though it is the one generally used, is not so technical that it may not be supplied by others. It is enough if the words used are not dubious or equivocal, and if it appears from the whole evidence that the affirmant intended to warrant, and did not express a mere matter of judgment or opinion: Jackson v. Wetherill, 7 S. & R. 480. A contract to deliver goods of a quality as well as a species defined and fixed is as capable of enforcement as any other contract." Applying the principle to a case where a quantity of ore was sent to be

tried and was tried for a specific purpose, was found satisfactory for that purpose, and the plaintiffs agreed to deliver ore of the same quality, Judge TRUNKEY said: "Nothing less fills the measure of the agreement. It is unnecessary to say whether the stipulation is a warranty or condition, it is a term of the contract and if broken by the plaintiffs they are liable for the breach:" Mining Co. v. Jones, 108 Pa. 55. Following in the same line are Whitehall Mfg. Co. v. Wise Bros., 119 Pa. 484, where the subject of the sale was a carload of "No. 3 siding," and the lumber delivered was of an inferior grade: Holt v. Pie, 120 Pa. 440, where the lumber ordered was "good sound hemlock:" Halloway v. Jacoby, 120 Pa. 583, where the defendant offered by letters to sell a carload of corn, and the plaintiff replied: "we will give 53 cents per bushel, provided it is good, salable corn:" Pratt v. Paules, 4 Atl. 72, where the subject of the contract was "No. 1 slate free from scabs and graybacks:" P. & R. C. & I. Co. v. Hoffman, 4 Atl. 848, where the thing contracted for was "truck bars, quality strictly neutral." All of these cases are considered at length in the case of Groetzinger v. Kahn, 165 Pa. 578, where the subject of the negotiations was "thoroughly tanned leather."

All of the authorities agree that there is an implied warranty that the article delivered shall correspond in specie with the commodity sold, unless there are facts and circumstances to show that the purchaser took upon himself the task of determining not only the quality of the article but the kind he purchased. Certainly the contract under consideration would not have been complied with by a delivery of wooden rails or of iron rails that could not be relayed; why should the term "iron" or "relaying" be regarded as any more essentially descriptive of the thing contracted for than the words "first class A No. 1." It was that kind of rails that the plaintiff undertook to deliver and the defendant to pay for. If we are right in holding that this was the undertaking there is no difficulty in distinguishing the case from that class of cases in which it is held that a warranty is not implied from mere representations of a seller made in praise and commendation of his wares. It is not always easy to draw the line and determine whether a case belongs to that class or to the class of those above cited, but we are clearly of opinion that this case belongs to the latter class and is governed by the principles enunciated in Warren v. Phila. Coal Co., supra.

3. Under the circumstances of this case the defendant was not estopped from setting up a claim for damages by his failure to redeliver the rails. Where there is a warranty a redelivery is not necessary: Borrekins v. Bevan, 3 R. 23; Halloway v. Jacoby, 120 Pa. 583. In a number of instances it has been held that statements descriptive of the subject-matter if intended as a substantive part of the contract will be regarded in the first instance as conditions on the failure of which the other party may repudiate in toto, by a refusal to accept or a return of the article, if that be practicable, or if part of the consideration has been received and rescission therefore has become impossible, such representations change their character as conditions and become warranties for the breach of which an action will lie to recover damages. The rule of law is thus stated by WILLIAMS, J., in Behn v. Burness, 3 B. & S. 755, as established on principle and sustained by authority: Wolcott v. Mount, 36 N. J. L. 262. Where the article has not been returned the measure of damages ordinarily is the difference between the value of the article delivered and the value of the article agreed to be delivered: Seigworth v. Leffel, 76 Pa. 476; Himes v. Kiehl, 154 Pa. 190. If the value of the rails agreed to be delivered was $1,247.07 of which $500 had been paid, and the actual value of the rails delivered was $447 the defendant's damages under the general rule above stated would be $800 and therefore he would have had a complete defense to the suit on the draft for $747.07 and would have been entitled to a certificate in his favor for $52.93 with interest. But under the instructions of the court contained in the answer to the defendant's third point, he was allowed to recover in addition the sum of $139.71, the expenses of his trip to Florida. The learned judge went farther than an affirmance of the point required and said: "Under the circumstances of this transaction and the necessity of a trip to Florida to prevent a total loss, the expenses so incurred ought to be taken into your consideration as a reasonable element of the damages sustained by the defendant." This instruction had a tendency to mislead because it seems to assume the necessity of a trip to Florida to prevent a total loss, which under the view of the case most favorable to the defendant was a question of fact for the jury. But how was the plaintiff bound by or affected by the arrangement which the defendant made

with his vendee? He did not authorize the trip and never promised to pay the expense. His letters of August 24 and August 29 were written after the defendant had of his own volition decided to go to Florida and cannot be construed as a direction to go on the plaintiff's behalf or a promise to pay the expense. Furthermore the plaintiff had expressly stipulated in his letter of July 25 heretofore quoted that he would not answer for any difference the defendant's vendee might find or claim. He was bound, as we have seen, to make good any difference in value between the rails ordered and the rails delivered, and this under the contract was the extent of his liability. He was careful to assume no other. He did not warrant that they would be accepted by the defendant's vendee. He dealt only with the defendant and is not responsible for expenses incurred by the latter in adjusting the difference between himself and another. We are of opinion, therefore, that the court erred in permitting the defendant to recover those expenses in addition to the difference in value between the rails contracted for and the rails delivered. The error does not require a reversal of the judgment. It can be corrected by deducting the amount erroneously allowed.

. It is argued with much force and plausibility by the appellee's counsel that the warranty is established by the admissions in the pleadings. In the view taken by the court below and by us of the contract as established by the correspondence it is unnecessary to consider that question, and the admission of the evidence specified in the first assignment of error was harmless, even if erroneous.

All of the questions raised by the appeal have been passed on and separate discussion of each assignment of error is not required.

The fifteenth assignment of error is sustained, and the judgment is reduced from $209.34 to $57.45 as of February 20, 1896. The other assignments of error are overruled and as . thus modified the judgment is affirmed.

WICKHAM, J., dissents, on the ground that there was no sufficient proof of a warranty on the part of the appellant.