## Armstrong *v.* Descalzi, Appellant.

*Contract—Sale—Warranty—Breach.*

1. In an action to recover the price of a car load of grape fruit, where the defendant claims damages as a set-off for a breach of warranty, and it appears that the plaintiff warranted the fruit in the correspondence establishing the contract as "first class stock," and evidence offered by the defendant shows that there were three well known grades of grape fruit, and that the fruit actually delivered was of the third grade, it is for the court to determine whether the correspondence contained a warranty, but it is for the jury to determine whether the classification alleged by the defendant actually existed.

2. In such case where it appears that the contract was made by correspondence alleged to contain the warranty, it is immaterial that one of the defendants had seen the grove in which the grape fruit was growing, before the sale, if it appears that the transaction was consummated by the correspondence alone without reference to any inspection of the goods by one of the defendants.

3. Where a contract of sale is made by correspondence the fact that the word "warrant" or "warranty" does not appear in the correspondence, is not conclusive that there was no warranty. It is enough if the words actually used are not dubious or equivocal, and if it appears from the whole evidence that the affirmant intended to warrant and did not express a mere matter of judgment or opinion.

*Contract—Sale—Warranty—Damages.*

4. Where purchasers exercise acts of ownership over goods, after they have ascertained the value of the goods, they are estopped from rescinding the sale, and their measure of damages for the breach of a warranty is not the expenditures they make in selling the goods, but the difference between the value of the goods received, and the value of the goods warranted.

Argued April 19, 1911. Appeal, No. 115, April T., 1911, by defendants, from judgment of C. P. No. 4, Allegheny Co., First Term, 1908, No. 862, on verdict for

plaintiff in case of F. C. Armstrong v. John B. Descalzi et al. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit to recover the purchase price of a car load of grape fruit. Before CARNAHAN, J.

The defendants set up as a defense a breach of warranty.

The facts relating to this branch of the case are fully set forth in the opinion of the Superior Court.

At the trial the defendant offered to show various charges to which they had been subjected in the sale, carting and storage of the fruit. This was objected to on the ground that they were precluded from so doing by the fact that they had exercised acts of ownership over it. The court sustained the objection and sealed the bill. [9]

Defendant presented this point:

Plaintiff's written communication offered in evidence amount to an express warranty that the grape fruit purchased by defendants from him would be first class stock; and if the jury believed that the grape fruit delivered was not first class stock, the verdict should be for defendants. *Answer:* That point is refused because that is a question that is left for you to determine. [4]

The court charged in part as follows:

[The question in this case is whether there was any such thing as an express or implied warranty. In none of the correspondence in reference to the grape fruit is there anything to this effect—that is, expressed in language to this effect; that the plaintiff would make good to the defendants whatever loss they might incur by reason of these goods not being what he represented them to be. Assuming that he represented them to be choice first class goods, there is nothing in the correspondence or in the evidence that we have here which puts him in the position of saying, in so many words, "I will make good to you any loss that you may suffer by reason of these goods not being what I represent them to be." That would be

an express warranty. But if you conclude, from the circumstances of the case, that the understanding between these parties was that the defendants were to get first class goods, and that they were induced to believe that these were first class goods by reason of representations made by the plaintiff, and the plaintiff undertook to sell the defendants first class goods, as he represented, or at least wanted the defendants to so understand, and the plaintiff did not do so, then it is for you to say whether he ought to be held responsible for the failure to do so on the ground that there was an implied undertaking on his part so to do.] [5]

[If you find that there was no warranty of this grape fruit and that the plaintiff simply made the statement that the grape fruit was good, that it was first class fruit in the sense that fruit picked at that time of the year would be first class fruit, and that he meant nothing else, and that he shipped it as such and therefore did not warrant that it was to be choice, then the plaintiff would be entitled to recover the full amount of his claim.] [6]

Verdict and judgment for plaintiff for $1,146.10. Defendant appealed.

*Errors assigned,* among others, were (1) refusal of motion for judgment for defendant n. o. v.; (2) refusal of binding instructions for defendant; (4–6) above instructions, quoting them; (9) rulings on evidence, quoting the bill of exceptions.

*John C. Bane,* with him *Alpern & Seder,* for appellant.—The correspondence disclosed a warranty: Warren v. Philadelphia Coal Co., 83 Pa. 437: West Republic Mining Co. v. Jones, 108 Pa. 55.

The duty of determining whether the plaintiff's promise, in the circumstances, raised an implied warranty, rested upon the court, and was not properly within the province of the jury; and it was error to commit this duty to the jury: Nellis v. Coleman, 98 Pa. 465; Forrest v. Nelson,

108 Pa. 481; Shafer v. Senseman, 125 Pa. 310; Holloway v. Jacoby, 120 Pa. 583; Groetzinger v. Kann, 165 Pa. 578; Joseph v. Richardson, 2 Pa. Superior Ct. 208; Warren v. Philadelphia Coal Co., 83 Pa. 437.

*Donald Thompson,* with him *Blakeley & Calvert,* for appellee.—The naked averment of a fact without more is not a warranty: Herman v. Brinker, 17 Pa. Superior Ct. 177; Pyott v. Baltz, 38 Pa. Superior Ct. 608; Fraley v. Bispham, 10 Pa. 320; Wetherill v. Neilson, 20 Pa. 448; Krauskopf v. Yarn Finishing Co., 26 Pa. Superior Ct. 506.

There is no warranty shown by the evidence in this case: Weed v. Weinberger, 12 Pa. Superior Ct. 12; Mahaffey v. Ferguson, 156 Pa. 156.

Under all the circumstances the appellants have no cause to complain that the question of warranty was left to the jury: Spring City Brick Co. v. Mfg. Co., 39 Pa. Superior Ct. 7.

The proper measure of damages was applied by the trial judge in his charge to the jury: Dentzel v. Island Park Assn., 229 Pa. 403; White v. Miller, 43 Pa. Superior Ct. 572; Estes v. Kauffman, 44 Pa. Superior Ct. 114; Raymond Bros. Co. v. Pennsylvania Co., 42 Pa. Superior Ct. 601.

OPINION BY RICE, P. J., October 9, 1911:

The questions raised on this appeal relate to a set-off and counterclaim which arose out of the purchase, by the defendants, in March, 1904, of a car load of grape fruit, it being claimed by the defendants that the plaintiff warranted the grape fruit to be "first class stock," and that there was a breach of the warranty. The plaintiff was a fruit grower and fruit broker in Florida, and the defendants were fruit sellers in Pittsburg, having business connections in New York. The correspondence between the parties appears to have been opened by a letter from defendants to plaintiff, dated March 2; but this letter is not in evidence. In reply the plaintiff wrote, on

March 6, 1904, "Your favor of 2d inst. received. Replying will say I will have one more car grape fruit nice stock. Holding at $5.00 per box f. o. b. here." On March 13, plaintiff wrote defendants, "Your wire of the 12th inst. received, stating will take car grape fruit price quoted, desirable sizes, reasonable discount off sizes. . . . Replying will write as cannot get up car G. Fruit under week. . . . While I priced you the G. Fruit at $5.00 can now get more money as prices are advancing here right along. On receipt this car wire me will take G. F. and Oranges, prices named and described above, draft payable bank here on B. L. & S. as consigned." Again, on March 18, the plaintiff wrote defendants as follows: "Your Thursday's wire received. As I wired and wrote fore part this week the car G. F. would not be ready to ride until last next week and will say don't think will be over 200 to 250 boxes the G. F. but can make the car out with oranges. Now, as I have made you the prices on this fruit, I will stand by it notwithstanding can now get more money here C. O. D. I still expect to let you have it, but want you to arrange with bank here paying $5.00 per box. . . . Shall put in nothing but good stock and no culls. . . . So as to have no misunderstanding better give bank instructions here to honor my draft. On billing G. Fruit at $5.00 and what oranges to fill out at $1.80 you will have plenty of time to arrange this with Manat County State Bank Palmetto Florida. On receipt this letter wire me if will do this and satisfactory to yourself. Now, I don't want you to think I am afraid of your check, but I can now get the cash paid C. O. D. without delay f. o. b. here. . . . Will hold draft on B. L. & S. Write me fully; the car fruit will stand by my proposition made you." The next communication, in chronological order, that appears in the evidence, is a letter from plaintiff to defendants, dated March 26, in which the plaintiff says: "I still have the Grape Fruit. . . . Shall wire you on Monday. If have the bank here to honor my draft on B. L. & S. at $5.00 for Grape Fruit and $1.90 per box

oranges to fill out car shall go right to work to get up car. Another party has the cash to pay over on receipt billing for this fruit, but holding him off for you as made first bid. . . . Now as I wrote shall put nothing in but first class stock." On March 31, defendants wrote plaintiff in reply as follows: "In response to your letter of the 26th and wire of last night we are wiring you to-night 'Grape Fruit ours. Want it packed for shipment Monday. Our Peter L. Descalzi will be there to settle for same' which we trust is satisfactory. Now, we will not hesitate in saying that we have our suspicions aroused in this transaction. The grape fruit is either inferior or then you are trying to get out of the deal by insisting on payment of same before shipment is made, a thing that we hardly believe no other house would concede to and especially to the extent of the amount involved in this transaction, and we therefore have concluded to instruct our Mr. Peter L. Descalzi to go up to your place from Miami purposely to inspect and pay you for the fruit and we trust this satisfactory to you. . . ." It appears, however, by defendant's letter of April 2, that they concluded, and so informed the plaintiff, not to have their Peter L. Descalzi go from Miami to inspect the grape fruit, but, to quote the exact words of the letter, "To have our bank wire guarantee payment of same and we trust that you will put us up only first class stock and give us a square deal, such we believe you have the reputation of doing. . . ." Accordingly, on April 2, defendants telegraphed plaintiff, "Bank will guarantee to-day for grape fruit." And later in the day, as the defendants had promised, the Diamond National Bank, of Pittsburg, telegraphed the Florida bank above mentioned, "We guarantee payment Armstrong's draft on Descalzi Fruit Co. for twelve hundred and fifty dollars." The foregoing is the substance, so far as material here, of the correspondence that preceded the shipment of the grape fruit. On April 12, the defendants wrote plaintiff that they had advices from New York that the car of grape fruit, which

had arrived the day before, was not of first class quality as the plaintiff had represented, but was inferior, and requesting him to make disposition of the same and instruct his bank to release their bank from its guaranty. On April 17, plaintiff wrote defendants fully in reply to their letter of the 12th. His letter contains this significant statement, "Now, as being a man of my word and dealing on the square, I agreed to let you have first class stock," which is followed by his assertion that he had complied with the agreement to the letter and could verify this assertion not only by his foreman, but by others disinterested who saw the fruit.

Before discussing the question of warranty, it will be well to call attention to two facts which the jury, if they believed the testimony adduced by the defendants, could and ought to have found. First. There are three well-known classes or grades of Florida grape fruit. As described in the testimony, the first class is large, heavy and juicy; the second class is of about the same quality, except that the skin is not so perfect—"has a little heavier rind, a little coarser on the outside;"—and the third class, or "June bloom," is of light weight, very thick skinned, and toward the stem end is always dry. Second. The grape fruit delivered was not of the first grade or class, but of the inferior, third grade, known as "June bloom." As these two facts depended exclusively upon oral testimony adduced by the defendants, it was the province of the jury, not of the court, to determine whether they existed: Second Nat. Bank of Pittsburg v. Hoffman, 229 Pa. 429; Colonial Trust Co. v. Getz, 28 Pa. Superior Ct. 619, 634. But as we have already intimated, there was ample evidence to warrant the jury in finding both of them.

Another preliminary question to be noticed arises in this way: Counsel for plaintiff concede the general rule to be that the construction of letters and telegrams and the determination whether statements and representations contained therein constitute a warranty, are ordi-

narily for the court, but contend that the determination of the question in the present case does not depend alone on construction of the letters and telegrams that passed between the parties, but depends, also, on the determination of the controverted allegation of the plaintiff that Peter L. Descalzi, one of the defendants, saw the grape fruit and had opportunity to ascertain by inspection its grade and quality before the agreement was fully consummated. The principle upon which counsel rely has been thus stated: "While the fact that the buyer had an opportunity to examine the goods sold is not material when there is a specific warranty covering the defect complained of, it is a circumstance to be considered in determining whether representations made during the negotiations constitute a warranty or were merely words of commendation:" 30 Am. & Eng. Ency. of Law (2d ed.), 146. The question then arises, whether there was sufficient evidence to warrant the jury in finding the fact last alluded to. Peter L. Descalzi denied it unequivocally, and the only evidence which it can be claimed supports it is that of Mr. Wade. He testified that he, in company with Peter L. Descalzi, passed the Houston grove, from which it is alleged the grape fruit came, and that the latter said to him that he would like to own that grape fruit. Upon cross-examination he admitted that Descalzi did not go inside the grove when he was with him, that he had no knowledge of his having gone inside at any other time, that the witness did not know whether the fruit in the interior of the grove was of the same quality and class as that which they saw along the road, that he did not know whether it was June bloom or not, and, in effect, that a better examination was necessary in order to ascertain its grade or class. The witness, it is to be noticed, was a stranger to the transaction involved in the suit, and, therefore, any remark that Descalzi may have made to him cannot be claimed as entering into or in any way affecting the contract. His testimony, when carefully considered as a

whole, is insufficient to warrant an inference that the defendants contracted with knowledge that the grape fruit the plaintiff proposed to deliver was not first-class stock, but June bloom, or that the plaintiff supposed that thay had knowledge, outside of his letters, of its grade and quality. Nor is there anything in the correspondence in evidence to indicate that the defendants contracted, or that the plaintiff supposed they were contracting, for the purchase of grape fruit that Peter Descalzi had seen, or in reliance upon anything but the plaintiff's unequivocal proposal to deliver first-class stock. The plaintiff's own testimony leaves no room for doubt upon this point. While he testified that he had a conversation with Peter L. Descalzi regarding the purchase of the grape fruit in the Houston grove, he also testified quite distinctly, both upon direct and cross-examination, that he did not make any deal with Peter L. Descalzi, but made the deal directly with the firm, and shipped the grape fruit to New York by their direction. We quote his testimony: "Q. The transaction and trade for the sale and purchase of this fruit was made by wire and letter? A. It was, yes, sir. Q. This was the agreement entered into between you and Mr. Peter Descalzi while he was here? A. He mentioned that he wanted the fruit, but we did not come to any terms; he and I didn't. Q. Do you know whether Mr. Peter Descalzi examined that fruit personally? A. I never was with him when he saw it." Without further elaboration upon this preliminary inquiry, we conclude that the determination of the question of warranty depends upon a construction of the letters and telegrams, in the light of the evidence as to the classes or grades into which grape fruit is divided, and that the evidence as to Peter L. Descalzi having seen the Houston grove is unimportant in the determination of that question and should be left out of view.

It is true the word "warrant" or "warranty" does not appear in the correspondence. But it is well settled by well-considered decisions, in accordance with just prin-

ciples of fair dealing, that this is not conclusive of the question. In Warren v. Phila. Coal Co., 83 Pa. 437, it was said: "The word warrant, though it is the one generally used, is not so technical that it may not be supplied by others. It is enough if the words used are not dubious or equivocal, and if it appears from the whole evidence that the affirmant intended to warrant, and did not express a mere matter of judgment or opinion. . . . A contract to deliver goods of a quality, as well as of a species, defined and fixed, is as capable of enforcement as any other contract." In West Republic Mining Co. v. Jones, 108 Pa. 55, the court cited and approved the doctrine of Warren v. Phila. Coal Co., and, in applying it to the case in hand, said: "Here a quantity of ore was sent to be tried, and was tried for a specific purpose, was found satisfactory for that purpose, and the plaintiffs agreed to deliver ore of the same quality. Nothing less fills the measure of the agreement. It is unnecessary to say whether the stipulation is a warranty or condition, it is a term of the contract, and if broken by the plaintiffs they are liable for the breach." In further illustration of the doctrine of Warren v. Phila. Coal Co. and its proper application we refer to Groetzinger v. Kann, 165 Pa. 578, and the cases reviewed in the opinion of Mr. Justice GREEN, and to the case of Joseph v. Richardson, 2 Pa. Superior Ct. 208, where the contract was for the delivery of "A. No. 1 first class relaying rails." In the latter case we said: "Certainly the contract under consideration would not have been complied with by a delivery of wooden rails or of iron rails that could not be relayed; why should the term 'iron' or 'relaying' be regarded as any more essentially descriptive of the thing contracted for than the words 'first class A. No. 1'? It was that kind of rails that the plaintiff undertook to deliver and the defendant to pay for. If we are right in holding that this was the undertaking there is no difficulty in distinguishing the case from that class of cases in which it is held that a warranty is not implied from mere

representations of a seller made in praise and commendation of his wares. It is not always easy to draw the line and determine whether a case belongs to that class or to the class of those above cited, but we are clearly of opinion that this case belongs to the latter class and is governed by the principles enunciated in Warren v. Phila. Coal Co., 83 Pa. 437."

Recurring now to the correspondence, we find the plaintiff, in his letter of March 26, declaring, "Now as I wrote shall put nothing in but first class stock," the defendants, in their letters and telegrams of March 31 and April 2, accepting the proposition and complying with the plaintiff's stipulation for guaranty of his draft for the price, at the same time saying, "we trust you will put us up only first class stock and give us a square deal," and plaintiff showing, by his letter of April 17, that he had not misunderstood his agreement or intended his previous words as a mere representation, by saying, "as a man of my word dealing on the square, I agreed to let you have first class stock." It is undoubtedly true that there is a loose use of the words "first class stock," in which they do not necessarily imply the same as "best quality," but may be regarded fairly as words of praise and commendation only, or as merely expressing the opinion and judgment of the affirmant. But if it be a fact, as testified by defendants' witnesses, that they designate one of three standard grades into which grape fruit is classified, the conclusion is irresistible that the plaintiff actually intended to bind himself to the truth of his statement that the grape fruit he proposed to deliver was of that class, and that the defendants accepted his proposition upon the faith of that undertaking. It was the province of the jury to determine the fact of classification, but it was the exclusive province of the court to declare whether there was or was not a warranty, if they found that fact. In short, the jury should have been instructed that, if the fact of classification was as above stated, the words of the correspondence imported,

in law, a warranty, for the breach of which the plaintiff was liable. It is thus seen that the defendants' first point should have been affirmed with this explanation, and that the instructions complained of in the fifth assignment of error gave the jury a wider latitude, in determining the question of warranty, than was permissible.

For the reasons above suggested, as well as others, the defendants were not entitled to binding instructions, and, therefore, the point requesting the same, as well as the motion for judgment non obstante, was correctly overruled: Dalmas v. Kemble, 215 Pa. 410; Hardoncourt v. North Penn Iron Co., 225 Pa. 379; Casey v. Canning, 39 Pa. Superior Ct. 94.

The defendants exercised such acts of ownership over the grape fruit, after they had ascertained its quality, as estopped them from rescinding the sale, and, therefore, their measure of damages was not the expenditures they made in selling the goods, but the difference between the value of the grape fruit received and the value of "first class stock:" Joseph v. Richardson, 2 Pa. Superior Ct. 208. There was, therefore, no error in rejecting the evidence embraced in the offer quoted in the ninth assignment of error.

The remaining assignments of error need not be separately discussed. We have sufficiently indicated the points of difference between the conclusions we have reached and the theory upon which the cause was submitted to the jury.

The judgment is reversed and venire facias de novo awarded.