## J. F. HOLLOWAY v. C. JACOBY.

ERROR TO THE COURT OF COMMON PLEAS OF CUMBER-
LAND COUNTY.

{120  583
{165  582

Argued May 5, 1886; Re-argued May 2, 1887—Decided October 1, 1888.

The defendant offered by letter to sell the plaintiff a car load of corn.
The plaintiff replied, also by letter, "We will give 53c. per bu. for the
car corn, provided it is good salable corn." The defendant answered,
"Will accept your offer for one car load of corn," and the same day
shipped the car and drew upon the plaintiff for the proceeds.

The plaintiff paid the draft without an opportunity to inspect the corn,
and when the latter arrived it was heated and spoiled; and in such con-
dition that it could not have been good salable corn when shipped. In
the sale of the corn in lots for the best price he could obtain, the plaint-
iff suffered a loss, to recover which he brought suit: *Held*:

That, in the acceptance of the plaintiff's offer for the corn there was an
implied warranty that it was good, salable corn, and, the corn delivered
not being of such character, the plaintiff was entitled to recover with-
out a tender of re-delivery.

Re-argued before MERCUR, C. J., GORDON, TRUNKEY,
STERRETT and GREEN, JJ.; PAXSON and CLARK, JJ., absent.

No. 419 January Term 1886, Sup. Ct.; court below, No. 7
January Term 1885, C. P.

The case below was an appeal from the judgment of a jus-
tice of the peace in favor of the plaintiff in an action by J. F.
Holloway, trading as J. F. Holloway & Co., against C. Jacoby.

At the trial on April 23, 1885, the case was closed on the
evidence when it was agreed by the parties that a trial by jury
should be dispensed with, and all matters in controversy sub-
mitted to *Mr. M. C. Herman,* as referee, under the provisions
of the act of May 14, 1874, P. L. 166.

The report of the referee, filed on June 23, 1885, was as
follows:

### FINDINGS OF FACT.

I find, from the evidence in the case, the facts to be as fol-
lows:

J. F. Holloway, trading as J. F. Holloway & Co., the plaint-

iff, resides at Phœnixville, Pa., where he is engaged in the wholesale grain trade, and C. Jacoby, the defendant, resides at Kerrsville, Cumberland county, Pa., where he has a warehouse on the Cumberland Valley Railroad, and is likewise engaged in the grain trade.

On March 20th, Holloway, in answer to a letter from Jacoby, of March 19, 1884, saying he had a car load of corn for sale, made the following proposition to him by letter:

PHŒNIXVILLE, Pa., March 20, 1884.

C. JACOBY, ESQ., Kerrsville.

Dear Sir:—Your favor 19th is received and noted. We will give 53c. per bus. for the car corn, provided it is good salable corn. If you accept consign to Collegeville, Pa., care P. & R., at Harrisville. Yours truly.

J. F. HOLLOWAY & CO.

Will send check promptly or you can draw if you wish to, through Farmers' and Mechanics' bank at this place.

J. H. F. & Co.

Jacoby responded to this proposition on March 21, 1884, as follows:

KERRSVILLE, March 21, 1884.

J. F. HOLLOWAY & CO.

Sir.—Yours of the 20th to hand, contents noted. Will accept your offer for one car of corn, which I will ship to-morrow C. V. R. 207, with corn, and have drawn on you for 283 dollars, which render statement at your earliest convenience, and oblige.

C. JACOBY.

The corn was bought without inspection by Holloway, and it was mutually understood that it was to be paid for on the track at Kerrsville.

Jacoby, on March 21, 1884, the date of his letter, shipped to Holloway a car load of corn containing 30,000 pounds, and the same day drew on him for $283, which was in due course accepted and paid. On March 27, 1884, the corn arrived at Rahn station, on the P. & R. railroad, at which place it was on the same day tendered to H. M. Hunsicker, to whom Holloway had sold it, whereupon Hunsicker inspected it, found it spoiled and refused to receive it. The corn in the middle of the car and the top of the load, from four to six inches in depth, was good, and the remainder, being about one third of the whole, was heated and spoiled to such an extent that it

stuck together in lumps. The sale to Hunsicker was for 65 cents per bushel. Upon his refusal to receive it Holloway unloaded the corn, separating the good from the damaged, and sold it in lots for the best price that could be obtained, as follows :

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*

Thus he lost in the transaction $118.72, the amount claimed in this action, and for the recovery of which it was brought.

The evidence leaves no room for doubt that the corn, when it reached Rahn station on March 27, 1884, was not good salable corn, and it could not have been good salable corn when loaded in the car at Kerrsville. All the witnesses examined on the subject concur in the opinion that good salable corn shipped in the month of March would not spoil in transit to the extent that this was, in six days, the time this corn was on the way. [But, though good salable corn when shipped, it does not appear that its damaged condition was apparent or known to Jacoby or to those who loaded it. They all believed it to be good salable corn.

Jacoby received no notice of the defective quality of the corn or of any complaint in reference to it until the latter part of May, 1884,][1] when he received the following letter from Holloway :

PHŒNIXVILLE, Pa., May 22, 1884.

C. JACOBY, Kerrsville, Pa.

Dear Sir.—Enclosed please find statement of account for car corn shipped us. As we advised, the car was hot and damaged on arrival, and we have handled it as best we could. Please send us check for balance due us, by return mail, and oblige. Yours Truly,

J. F. HOLLOWAY & CO.

The balance claimed by this letter and the statement referred to was the $118.72, loss as before stated, which Jacoby refused to pay, and hence this suit.

### CONCLUSIONS OF LAW.

It will be observed that the subject of the contract was a "car of corn." This is what Jacoby proposed to sell, and Holloway offered 53 cents per bushel for it provided it was good salable corn. Jacoby accepted the offer "for one car of corn," simply, and at once shipped it and drew on Holloway

for the price, and Holloway accepted and paid the draft and received and disposed of the corn without any notice to Jacoby of its defective condition.   This ended it; the contract was executed.   The corn being spoiled and not, therefore, good salable corn, Holloway might have refused to receive it, and had he done so and promptly notified Jacoby of its rejection, he would have had his action to recover back the amount of the draft paid; for, having bought it upon condition that it was good salable corn, he was not bound to take corn of an inferior quality.   Yet, as he not only received and disposed of it, but never gave any notice to Jacoby of its defective quality until two months after its delivery, he must be taken to have waived the condition upon which he bought.

[According to the terms of the contract it is clear that there was no express warranty of quality, nor do the facts and circumstances of the case give rise to an implied warranty.] [2] Where there is no knowledge on the part of the vender of goods of their defective quality, although no opportunity of inspecting them is given the vendee, the sale itself raises no implied warranty of quality or even merchantability, on which the vendee can sue if the goods prove worthless: Ryan v. Ulmer, 108 Pa. 332.   This is the last case on the subject and very much like the one in hand.

[There was no fraudulent representation or concealment by Jacoby: the damaged condition of the corn was not known to him, and there is nothing therefore in the case to subject him to the implication of warranty of quality or even merchantability.   There being no warranty express or implied, no deceit or fraudulent representation, the plaintiff has no ground of action for damages against the defendant.] [3]   The decision must be given in favor of the defendant.

And now, June 23, 1885 : The decision of the referee is rendered in favor of the defendant.

To this report the plaintiff filed various exceptions, the material ones being the following:

2–4. The parts of the report embraced in [ ] [2 to 4]

7. The finding that "Jacoby accepted the offer for one car of corn simply," instead of finding that the plaintiff offered to purchase one car of "good salable corn" and that the defendant accepted this offer.

On December 3, 1885, the referee filed his report upon the exceptions filed:

I have heard the arguments of counsel on the exceptions filed and reconsidered the whole case. Whilst, according to the evidence, the corn could not have been good salable corn when shipped, I cannot find that Jacoby was aware of its defective condition, without believing that he and his employees who handled it have testified falsely, and this I do not believe. It would be entirely consistent with the evidence, that its defective condition was, as yet, latent, and therefore, unknown to him or them. Nor can I say that his failure to discover its true condition was so grossly negligent as to justify the inference of fraud. On the facts, the conclusion could not be otherwise, under the law.

The first exception was not argued. None of the exceptions are sustained.

And now, December 3, 1885: The exceptions filed to the decision of the referee, rendered on the 23d of June, are overruled, and thereupon, it is ordered, that judgment be entered for the defendant according to the said decision.

Judgment having been entered for the defendant, as ordered, the plaintiff took this writ, by different specifications assigning as error the overruling of his said exceptions, ut supra.

*Mr. W. R. Murphy* and *Mr. John T. Stuart*, for the plaintiff in error:

1. The finding to the effect that the corn was so arranged that at the door in the middle of the car and over the top where it could be seen, it was good, and the covered parts that could not be seen, were almost rotten and worthless, was a finding of knowledge on the part of the defendant; for this arrangement could by no possibility have been the result of accident. It is an unmistakable finding of design; and, if the defendant knew the corn when shipped was bad, and the arrangement of it in the car was designed by him, then the plaintiff was entitled to recover: Ryan v. Ulmer, 108 Pa. 332. Moreover, the facts found by the referee, if not a finding of knowledge of the quality of the corn on defendant's part, was virtually a finding of

such gross negligence as is the equivalent of fraud, abundantly sufficient to supply the place of knowledge.

2. Was there, then, a warranty in the acceptance of the plaintiff's order by the defendant? If so, it was not necessary for the plaintiff to re-deliver or tender the corn to the defendant before bringing suit: Borrekins v. Bevan, 3 R. 23. It is conceded that the mere fact of sale implies no warranty of quality, but only of title.* The offer comes from the defendant, and the plaintiff writes that he will give 53 cents per bushel, provided it is good salable corn. The defendant answers, " I will accept *your* offer for one car of corn," and immediately ships it. The order was in clear, unmistakable terms, and by its acceptance the defendant warranted the corn to be in accordance with the order. Furthermore the vendee, relied entirely on the judgment and good faith of the vender; there was no opportunity for inspection; the draft was paid immediately for the accommodation of the vender. In such a case, if the terms of the contract fall short of an express warranty, the doctrine of implied warranty should be carried to its utmost limit.

3. To constitute a warranty no special form of words, is necessary. The word " warrant " is not so technical that it may not be supplied by others. A contract to deliver goods of a defined quality is as capable of enforcement as any other contract: Mining Co. v. Jones, 108 Pa. 65 ; Benj. on Sales, 4th Am. ed., 613 n. ; Warren v. Phila. Coal Co., 83 Pa. 440.

*Mr. S. Hepburn, Jr.* (with him *Messrs. Henderson & Hays*), for the defendant in error:

1. If the referee has intelligently and fairly passed upon the evidence, why shall his findings be disturbed? The defective condition of the corn at the time of delivery, if any existed, was not discoverable even upon inspection by the defendant or those who handled it. The defect was latent, and this was the finding of the referee. The appearance and condition of the corn, in the car at Collegeville, can no more impute a guilty knowledge to the defendant than it can set aside the positive testimony of those who handled it at Kerrsville. The apparent

---

*See act of April 13, 1887, P. L. 21, " relative to sales by sample."

inconsistency is reconciled, not maintained, by the referee. Every fact and inference, therefore, negatives the idea of fraud, deceit or misrepresentation on the part of the defendant.

2. There was no express warranty and none can arise by implication under the facts found. The sale at most was conditional. If, then, the corn was not as contracted for, it was the plain duty of the plaintiff to reject it and notify the defendant. The law as ruled in Wetherill v. Neilson, 20 Pa. 448, and Ryan v. Ulmer, 108 Pa. 332, properly applied to the facts, sustains the finding of the referee.

OPINION, MR. JUSTICE PAXSON:

The learned referee has found that there was no warranty in this case. If he is right in this, his conclusions are correct and his judgment must stand.

The defendant offered by letter to sell the plaintiff a car load of corn. The plaintiff accepted it in these words: "Your favor of 19th is received and noted. We will give 53 cents per bushel for the car corn, provided it is good, salable corn. If you accept, consign to Collegeville, Pa.," etc. The defendant replied: "Will accept your offer for one car load of corn," etc. The acceptance of plaintiff's offer was an agreement to send him a car load of good salable corn, and not a car load of corn generally, without any regard to quality, as was assumed by the referee. The fact was found that a large portion of the corn was spoiled when delivered. It had heated during transportation or prior thereto. It is difficult to see how this could have occurred during the six days required for the transportation, as it was shipped in March; but with this we have nothing to do, and upon this point we accept the finding of the referee. We are of opinion that there was an implied warranty that the corn was good, salable corn. It was this the plaintiff bought, and the corn delivered was not of this description. Much of it was so badly damaged as to be almost worthless. The plaintiff sold it as best he could and brought this action to recover the amount of his loss. We are of opinion he is entitled to recover. In the case of a warranty, a re-delivery is not necessary: Borrekins v. Bevan, 3 R. 23.

Judgment reversed and a procedendo awarded.