Standard Sewing Mach. Co. v. New State Shirt & Overall Mfg. Co.

## STANDARD SEWING MACH. CO. v. NEW STATE SHIRT & OVERALL MFG. CO.

No. 3043.   Opinion Filed May 12, 1914.

Rehearing Denied July 21, 1914.

(141 Pac. 1111.)

1.  PARTNERSHIP—Doing Business Under Fictitious Name—Right of Successor to Sue. A corporation which has in good faith acquired a right of action for breach of implied warranty of machines theretofore sold its predecessor in such right may bring and maintain such action, notwithstanding such predecessor in right was a partnership, doing business under a fictitious name, which never complied with sections 3905 and 3907, St. Okla. 1890 (sections 4469 and 4471, Rev. Laws 1910).

2.  ASSIGNMENTS—Breach of Implied Warranty—Right to Assign. A right of action for breach of implied warranty that machines are suitable to perform the ordinary work for which they are made is assignable.

3.  SALES—Implied Warranty—Sewing Machines. In the absence of contract which negatives the same, there is an implied warranty in the sale of sewing machines that they are suitable to perform the ordinary work for which they are made.

4.  SAME—Caveat Emptor—Defect not Discoverable by Examination. The maxim of caveat emptor does not apply where the defect in the machine sold by its manufacturer while it is new upon the market is latent, is not discoverable upon examination, and renders the machine unsuitable to perform the ordinary work for which it is made.

(Syllabus by Thacker, C.)

*Error from County Court, Oklahoma County;*
*John W. Hayson, Judge.*

Action by the New State Shirt & Overall Manufacturing Company, a corporation, against the Standard Sewing Machine Company, a corporation, for damages for breach of implied warranty of machines. Judgment for plaintiff, and defendant brings error. Affirmed.

*John E. Du Mars, Ed. S. Vaught,* and *R. E. Gish,* for plaintiff in error.

*Wilson & Tomerlin* and *Burwell, Crockett & Johnson,* for defendant in error.

Opinion by THACKER, C. Plaintiff in error will be designated as defendant, and both defendant in error, a corporation, and its predecessor in business, a partnership which was finally merged into said corporation, will be designated as plaintiff, in accord with the respective titles of the parties to this action in the trial court.

At the outset we will state that said "predecessor in business" was a partnership composed of three members doing business under the firm name of the present plaintiff from about August 6, 1906, until about July 25, 1907, when the concern was incorporated in said name and with all the partners as stockholders in such corporation, the husband of one and the son of another partner being the only stockholders in the corporation who were not members of the partnership; and the corporation at the time of its organization succeeded to and took over by assignment, all the property, rights, liabilities, and business of the copartnership.

Plaintiff's said "predecessor" at no time complied with the provisions of sections 3905 and 3907, St. Okla. 1890 (sections 4469 and 4471, Rev. Laws 1910), which read as follows:

"Section 3905. Except as otherwise provided in the next section, every partnership transacting business in this state under a fictitious name, or a designation not showing the names of the persons interested as partners in such business, must file with the clerk of the district court of the county or subdivision in which its principal place of business is stated, a certificate, stating the names in full of all the members of such partnership, and their places of residence, and publish the same once a week for four successive weeks, in a newspaper published in the county, if there be one, and if there be none in such county, then in a newspaper published in an adjoining county."

"Section 3907. The certificate filed with the clerk of the district court provided in the second preceding section, must be signed by the partners and acknowledged before some officer authorized to take acknowledgments of conveyances of real property. Persons doing business as partners under a fictitious name, contrary to the provisions of this article, shall not maintain any action on or on account of any contracts made or transactions had in their partnership name in any court of this state, until they have first filed the certificate and made the publication herein

required:  Provided, however, that if such partners shall at any time comply with the provisions of this article, then such partnership shall have the right to maintain an action in all such partnership contracts and transactions entered into prior to as well as after such compliance, and the disabilities imposed on partnerships for failure to comply with this article shall be thereby removed."

This being an action for breach of an alleged implied warranty of quality and fitness of fifteen sewing machines in a sale of the same by defendant to plaintiff in October, 1906, it is urged by defendant that plaintiff cannot maintain this action because of failure of its said "predecessor" to comply with the provisions of said sections 3905 and 3907, *supra;* and the following cases are cited in support of their contention:  *Choctaw Lumber Co. v. Gilmore,* 11 Okla. 462, 68 Pac. 733; *Baker v. Van Ness & Co.,* 25 Okla. 34, 105 Pac. 660; *Smith v. Woods,* 33 Okla. 233, 124 Pac. 1088.

In the Choctaw Lumber Co. case, *supra,* it was merely held that after commencing suit without compliance with said sections 3905 and 3907, *supra,* the plaintiff could not confer upon one of its members the right to maintain that suit by assigning to him its interest therein; and this was evidently upon the theory that the right to "maintain," denied by the statute, includes the right to begin an action, as held in the Baker case, *supra.*  Neither of the cases cited in any way appears to support defendant's contentions.

The only penalty imposed by sections 3905 and 3907, *supra,* or to be found at all for failure to comply therewith is the disability to maintain any action, which includes the disability to begin any action, so long as they have not complied with said sections; and it seems clear that these sections of the statute do not inhibit such partnership from in good faith selling, assigning, or otherwise transferring its property and rights of action nor its successor in right, who takes the same in good faith, from bringing and maintaining such action; and we do not think the point urged by defendant against plaintiff's right to bring and maintain this action can be sustained.

We think there is no doubt but that, if there was a breach of implied warranty in the sale of these machines, the right of action thereon was assignable by plaintiff's predecessor to the plaintiff. See section 4268, St. 1890 (section 6740, Rev. Laws 1910); *C., R. I. & P. Ry. Co. v. Bankers' Nat. Bank,* 32 Okla. 290, 122 Pac. 499; *Kansas City, M. & O. Ry. Co. v. Shutt,* 24 Okla. 96, 104 Pac. 51, 138 Am. St. Rep. 870, 20 Ann. Cas. 255.

Plaintiff, a manufacturer of overalls and shirts, in about October, 1906, purchased of defendant, a manufacturer of sewing machines, 25 such machines, including said fifteen which are described in the written order therefor as "15 F. heads complete with tabling," at $487.50, terms "3% ten days or 90 days."

This written order, which does not expressly nor otherwise exclude the idea of the usual implied warranty as to quality and fitness, was not given until some three days after plaintiff had orally ordered the machines, and defendant, through its agent, James P. Kerr, had installed them in plaintiff's plant in Oklahoma City; and at all times pertinent to this case defendant knew the purpose for which plaintiff purchased and kept the machines; *i. e.,* in the first instance, for making shirts, and later, when defendant had undertaken by some alteration therein to adapt them to such new purpose, for making overalls.

It appears that so long as the proper tension of the leather or composition belt of the machines was retained they did good work; but it further appears that the precise tension requisite to good work could not be maintained for any considerable length of time with such belts, nor was there any belt that could be made and used upon such make of machines that would so retain the proper tension; and whenever the tension was not just right there was such want of co-ordination, functioning, or accuracy in the movements of the parts of the machine that the thread would break and the needle, missing the hole in the "presserfoot," would strike this "foot" and break thereon so often as to render the use of the machine impracticable and the machines themselves almost worthless, resulting in expense to plaintiff exceeding the value of their use. They were made and sold as

shirt-making machines; but they were unsuited for that use. During the time plaintiff attempted to use them, defendant's agent, James P. Kerr, claiming that he could do so successfully, undertook to alter them so that they might be used in making overalls; but they proved unsuited for that use. In fact, the nature of the defect in the machines negatives the idea that they were suited for sewing at all; and, although defendant must have known of it, the defect was latent, and not discoverable upon ordinary inspection. It appears that these were new machines in the market; and the defendant soon supplanted them by putting out a metal fiber belt machine of a different make which was free from such defect. In other words, the machines would not perform the ordinary work for which they were made and sold, except for such short periods as to be inconsiderable.

From time to time, about six times in all, said agent, James P. Kerr, corrected the said error in the working of the machines by adjusting the belts so as to give the proper tension; and on each such occasion he assured plaintiff that the machines would thenceforth work properly; but such corrections were merely temporary, were not lasting in effect, and were immediately followed by recurrence of the same defect in the working of the machine.

The following excerpts from letters received by plaintiff from defendant will, perhaps, throw some light upon both the defect in the machines and the attitude of the parties towards same at the dates of letters:

On May 9, 1907, defendant wrote:

"As to the stitchers breaking thread, would suggest that you see that the belt is not too loose, which is liable to cause this trouble. * * * If the take up is not in proper time it will cause the thread to break."

On June 15, 1908, defendant wrote:

"Regarding to the belts on these machines, we were trying to get out a chain belt for these machines but after trying them awhile we found they were not much if any, better than the leather belts, and when I mentioned to you about the new belts, must have been in reference to our new machine that we are coming out with. * * * This machine has a new style belt

which will last as long as the machine lasts but this is an entirely different machine than the one you have. * * * While we have a good many of the same kind of machines out that you have, we have very little complaint regarding to the belts, yet at the same time I am aware that in leather belts at times there are some that are not as good as they should be. Trusting, however, that the belts we are sending you to-day will prove more satisfactory. * * *"

In another letter of same date, defendant wrote:

"Now regarding to the new belts you mention, we were working on a chain belt for the G and F heads, but later on we found them to be no better than the leather belts. * * *"

Each of the foregoing letters purported to be in answer to a letter from plaintiff.

Plaintiff retained and paid for the machines at some undisclosed time, the inference being barely warranted, if at all, that he made payment in the belief induced by defendant that the defect in the working of same had been or would be overcome; but some time in 1908 or 1909, the machines being still so defective, plaintiff abandoned all use and all attempts to use them; and it appears from the testimony of witnesses for plaintiff that the machines were then each worth $3.50, the price offered by defendant for them.

Plaintiff brought this action upon an alleged implied warranty of the machines to recover $660.80 as alleged damages, which, besides $450 as difference between the value of the machines as they were and as they should have been, includes an item of $208.80 alleged to have been "expended by the plaintiff and its predecessor in trying to use said machines in its said manufacturing business"; and a verdict and judgment for $300 was recovered.

In a note at page 607 to *Gold Ridge Min. Co. v. Tallmadge,* 44 Ore. 34, 74 Pac. 325, 102 Am. St. Rep. 602, it is said:

"If goods which are the subject of a sale are in existence, and may be inspected by the buyer, and there is no fraud on the part of the seller, the maxim of *caveat emptor* applies, even though the defects are latent and not discoverable upon examination; at least, if the seller is neither the grower nor the manufacturer."

And at page 615 of 102 Am. St. Rep. it is said:

"A manufacturer who sells an article of his own making impliedly warrants that it is free from latent defects arising from the process of manufacture or the use of defective materials."

While at page 616 of 102 Am. St. Rep. it is said:

"It would seem that the manufacturer is not liable for latent defects, unless he can be presumed to know of their existence. *Hoe v. Sanborn,* 21 N. Y. 552, 78 Am. Dec. 163."

But, as stated incidentally in *Walrus Mfg. Co. v. McMehen,* 39 Okla. 667, 136 Pac. 772:

"The fundamental inquiry must always be whether, under the circumstances of the particular case, the buyer had the right to rely and necessarily relied on the judgment of the seller and not upon his own (*Kellogg Bridge Co. v. Hamilton,* 110 U. S. 108, 3 Sup. Ct. 537, 28 L. Ed. 86) in order to ascertain if there is an implied warranty. * * *"

In *Obenchain & Boyer v. Incorporated Town of Roff,* 29 Okla. 211, 116 Pac. 782, and in *Stanford et al. v. National Drill Mfg. Co.,* 28 Okla. 441, 114 Pac. 734, the case of *Kellogg Bridge Co. v. Hamilton,* 110 U. S. 108, 3 Sup. Ct. 537, 28 L. Ed. 86, is approvingly quoted as follows:

"But no implied warranty that a machine, tool, or article is suitable to accomplish a particular purpose or to do a specific work arises where the vendor orders of the manufacturer, or purchases of the dealer, a specific, described or definite machine, tool, or article, although the vendor knows the purpose or work which the purchaser intends to accomplish with it, and assures him that it will effect it. Such an assurance is but the expression of an opinion, when it is followed by a written contract, complete in itself, which is silent on the subject. The extent of the implied warranty in such case is that the machine, tool, or article shall correspond with the description or exemplar, *and that it shall be suitable to perform the ordinary work which the described machine is made to do."*

Tested by the rule which we have italicized in the foregoing quotation, we are of the opinion that in the present case there was a breach of implied warranty that the machine purchased by plaintiff would perform the ordinary work of sewing.

In our opinion, the judgment should be affirmed.

By the Court: It is so ordered.