## WALLACE v. L. D. CLARK & SON et al.

No. 8601—Opinion Filed May 21, 1918.

Rehearing Denied Sept. 5, 1918.

Second Rehearing Denied Feb. 25, 1919.

(174 Pac. 557.)

**1. Sales—Contract—Merchantable Goods.**

In the absence of an agreement as to quality, the seller is not required to furnish to his buyer goods of the best quality; yet he cannot fulfill his contract by supplying articles of a poor grade, but must furnish articles of a fair average grade and such as are merchantable.

**2. Same—Acceptance of Goods—Knowledge of Defects.**

Where the law implies a warranty, the acceptance of the goods, with knowledge of the defects, will not bar an action for damages on account of a defect in the quality; but in such a case the warranty will survive the acceptance.

**3. Same—Action for Price—Question for Jury.**

Evidence examined, and held to present a question for the jury to determine as to the merchantability of the goods sold, and it was error for the court to have directed a verdict.

(Syllabus by Hooker, C.)

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by E. F. Wallace, doing business as the Wallace Brokerage Company, against L. D. Clark & Son and others. Judgment for plaintiff in justice court, and on appeal to the district court judgment directed for defendants, and plaintiff brings error. Reversed and remanded.

Bernstein & Spiers, for plaintiff in error.

Fulton, Shirk & Danner, for defendants in error.

Opinion by HOOKER, C. When the transaction involved here transpired, Wallace was a broker in Oklahoma City, and Clark & Son were manufacturers or canners of sardines engaged in business in Maine. In September, 1915, Clark & Son offered in writing to sell Wallace some sardines, as follows:

"Offer one or two mixed cars Keyless Oils, three-quarters mustard. $2 f. o. b. prompt shipment."

And on September 12, 1915, Wallace accepted the offer as follows:

"Eleventh. Ship latter part next week Seaboard Rock Island, six hundred fifty oils two hundred three-quarters mustards."

And on September 20, 1915, Wallace requested oils increased 100 and mustards decreased 100. On October 7, 1915, the shipment arrived in Oklahoma City, and Wallace advised defendant in error by wire:

"Mustards satisfactory customers reject oils account too large, don't contain enough oil, only run about four fish to can," etc.

After some correspondence between the parties, wherein Wallace was at all times objecting to the quality of the oils and demanding a reduction of the price on account thereof, and Clark & Son were contending the shipment was all the market afforded and in every way satisfactory, Clark & Son refused to reduce the price and requested Wallace to divert the shipment, but Wallace declined to do so, and received the shipment by paying the draft to the collecting bank, and thereupon he instituted suit against Clark & Son in the justice court and garnished the money in the possession of the collecting bank, and in the petition filed in said action it is alleged:

"That for a valuable consideration the plaintiff purchased of the defendants, L. D. Clark & Son, 750 cases one-fourth oils, Banquet brand sardines, which sardines were to be standard sardines; that when the sardines arrived in Oklahoma City, and were inspected by this plaintiff they were found not to be up to standard, but that they were of a much inferior grade, the fish large and not the kind that the plaintiff purchased of the defendants, and which defendants were to ship to plaintiff; that the sardines were billed to plaintiff at $2 per case; that the sardines sent to plaintiff being of an inferior grade were not worth more than $1.75 per case, or 25 cents less on each case; that the plaintiff's damage was 25 cents per case on the 750 cases, or the sum of $187.50, for which judgment was prayed."

No answer was filed in the justice court, and on the trial a judgment was ordered therein in favor of plaintiff in error; but an appeal was taken to the district court, where the cause was tried anew upon the same pleadings, and, after the introduction of all the evidence, the court directed a verdict in favor of the defendant in error, from which, after motion for a new trial was duly filed and overruled, the plaintiff in error has appealed to this court.

It is asserted by the defendants in error that the sardines in question were sold by description, subject to inspection, and, being sold by description, the question of warranty does not enter into the contract between the parties, and that, if the sardines as delivered did not comply with the description, it was simply a breach of contract on the part of the seller, and in no state of the

case a breach of any warranty; and that the plaintiff in error after inspection, with full knowledge of the alleged defects, accepted the shipment of sardines and paid for them; that he is now estopped to claim damages, as an acceptance of the goods constitutes a waiver of any alleged breach on the part of the seller. In support of the doctrine announced by the defendant in error, the following authorities are cited: Brown v. Baird, 5 Okla. 133, 48 Pac. 180; Brown v. Davidson, 42 Okla. 598, 142 Pac. 387; Talley v. Harrison, 60 Okla. 110, 159 Pac. 366; Springfield Shingle Co. v. Edgecomb, 52 Wash. 620, 101 Pac. 233, 35 L. R. A. (N. S.) 258; 35 Cyc. pp. 397-410, 605; Teedman on Sales, § 187; 24 Enc. Law, 1157; Fla. Athletic Club v. Hope Lbr. Co., 18 Tex. Civ. App. 161, 44 S. W. 10; Armstrong v. Latimer, 165 Pa. 389, 30 Atl. 990; Darby v. Hall, 3 Pennewill, 25, 50 Atl. 64; Mathews v. Smith, 67 N. C. 374; and other cases.

By reference to the letters and telegrams which constitute the contract between these parties with reference to the sale and delivery of the sardines in question, we find that the contract only called for 650 oils, 200 three-fourths mustards, which was afterwards modified to 750 oils and 100 three-fourths mustards. This constitutes the only description of the sardines. It must be borne in mind that the defendants in error were manufacturers or canners of these sardines, and that the plaintiff in error was in the brokerage business, engaged in the sale thereof to their customers in their locality. These letters and telegrams do not provide what qualifications these sardines should possess, nor do they furnish any description by which we can determine what kind of sardines were to be shipped or what was contemplated by the parties, other than so many oils and so many three-quarters mustard; and as said in 35 Cyc. p. 214:

"Although, in the absence of a definite agreement as to quality, no particular quality will be implied, and the seller is not bound to furnish goods of the best quality, yet he cannot fulfill his contract by furnishing articles of the poorest quality, but must at least furnish articles of a fair average quality, and such as are merchantable. The mere fact that the value of the goods is not equal to the price paid is immaterial."

By the term "merchantable" we mean sardines of a quality such as is generally sold in the market and suitable for the purpose for which they are intended, although not of the best quality (see 35 Cyc. p. 219); and in 35 Cyc. p. 220, it is said:

"Generally, an article to be good or merchantable quality must be suitable for the purpose for which it is intended, and the fact that the goods were not to be of the best quality does not change the rule. * * *"

This court, in the case of Standard Sewing Mach. Co. v. New State Shirt & O. Co., 42 Okla. 554, 141 Pac. 1111, held:

"In the absence of contract which negatives the same, there is an implied warranty in the sale of sewing marchines that they are suitable to perform the ordinary work for which they are made."

And also in Nettograph Mach. Co. v. Brown et al., 28 Okla. 436, 114 Pac. 1102, 34 L. R. A. (N. S.) 737, it is held:

"The law implies a warranty in a contract for the sale of patented machines that they are reasonably adapted to the purpose for which they are made."

And in Williston on Sales, §·232, it is said:

"Where the seller manufactured the goods which he sold, a warranty that the goods are merchantable is implied both in England and in this country, unless something in the terms of the bargain indicates a contrary intention, or unless the buyer had opportunity to inspect the goods and this inspection would have disclosed the defect. If the seller holds himself out to the buyer as the manufacturer of the subject-matter of the bargain, the case is governed by the principles applicable to sales by manufacturers. * * *"

And in section 243 thereof, speaking of the meaning of the word "merchantable," it is said:

"The requirement when it exists that goods shall be merchantable does not require that the goods shall be of first quality, or even that they shall be as good as the average of goods of the sort. In some cases it is indeed said that goods must be of 'medium quality,' but this seems to go too far. On the one hand, it is not enough that the article is such as would in ordinary parlance be called by the name which the buyer and seller used to describe it, but, on the other hand, if there is no warranty of fitness for a particular purpose, the buyer cannot claim more than that the goods with their defects known shall be salable as goods of the general kind which they were described or supposed to be when bought."

And in Benjamin on Sales, vol. 11, p. 843, it is said:

"But where a chattel is to be made or supplied to the order of the purchaser, there is an implied warranty that it is reasonably fit for the purpose for which it is ordinarily used, or that it is fit for the special purpose intended by the buyer, if that purpose be

communicated to the vendor when the order is given. * * * "

In Marchie v. Cornell, 155 Mass. 60, 29 N. E. 207, 14 L. R. A. 492, 31 Am. St. Rep. 526, it is said:

"In an executory contract for the sale of merchandise, it is an implied condition that it shall be of merchantable quality.' Hamilton v. Ganyard, 34 Barb. (N. Y.) 204, affirmed 3 Keys, 45; Reed v. Randall, 29 N. Y. 358, 86 Am. Dec. 305; Fitch v. Archibald, 29 N. J. Law, 160; Ketchum v. Wells, 19 Wis. 25; McClung v. Kelley, 21 Iowa, 508; Doane v. Dunham, 65 Ill. 512.

From the foregoing authorities we are of the opinion that the law imposed upon the defendant in error the obligation of delivering to the plaintiff in error sardines that were merchantable in view of the fact that the contract between the parties failed to specify the kind or character or quality thereof, other than so many cases of oils and so many cases of mustards.

It is asserted by the defendant in error that the acceptance of these sardines by the plaintiff in error precludes a recovery for any damages by reason of the failure of defendants in error to comply with their contract; or, in other words, that a warranty does not survive the acceptance. With this contention of the defendant in error we are unable to agree.

In North Alaskan Salmon Co. v. Hobbs, Wall & Co., 159 Cal. 380, 113 Pac. 870, 120 Pac. 27, 35 L. R. A. (N. S.) p. 507 (note), it is said:

"The authorities are not in accord on the question whether an implied warranty survives acceptance with knowledge by the purchaser of a breach of the warranty. Aside from New York, the rule generally obtains in most states that an implied warranty, like an express warranty, survives acceptances, even as to known defects, to the extent that the breach may be relied upon as furnishing a basis to recoup or counterclaim damages in an action for the purchase price, or as the basis for an independent action for damages. Frith v. Holland, 133 Ala. 583 [32 South. 494, 91 Am. St. Rep. 54]; Weed v. Dyer, 53 Ark. 155, 13 S. W. 592; * * * Babcock v. Trice, 18 Ill. 420, 68 Am. Dec. 560; Campion v. Marston, 99 Me. 410, 59 Atl. 548; Alabama Steel & Wire Co. v. Symons, 110 Mo. App. 41, 83 S. W. 78; Holloway v. Jacoby, 120 Pa. 583 [15 Atl. 487, 6 Am. St. Rep. 737]; Taylor Cotton Seed Oil & Gin Co. v. Pumphrey (Tex.) 32 S. W. 225."

In 35 Cyc. p. 430, it is said:

"It is perhaps the rule in all jurisdictions that a warranty either express or implied survives acceptance or retention of the goods as to defects not discovered on inspection, whether the contract be executed or executory. But according to many decisions on an executory contract of sale, where there is an implied warranty, acceptance is a waiver of patent defects. And in most jurisdictions the rule is laid down without qualification that the acceptance or retention of goods sold does not waive a breach of warranty, and that it makes no difference whether the contract of sale is executed or executory, the warranty express or implied, or the defect patent or latent."

See authorities from Arkansas, California, Illinois, Indiana, Iowa, Kansas, Maine, Maryland, Massachusetts, Mississippi, Missouri, North Caroline, Ohio, Pennsylvania, Texas, Vermont, Washington, Wisconsin, and other states supporting the rule cited in the notes on page 431 thereof.

In Williston on Sales, p. 846, it is said:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

In commenting upon the above text, the author says:

"This section is not contained in the English act, but Section 11 (1) (a) of that act authorizes the buyer to take title to goods which do not comply with the contract, and thereafter hold the seller liable in damages. The latter part of the American section imposes a qualification of the buyer's rights which is justified by business practice and by some decisions as well as by the law on the continent of Europe."

Further the author says:

"Much confusion exists in American law on the right of a buyer who has accepted goods thereafter to sue for damages because of their defective quality or because of other defects in the seller's performance. The question involved is not peculiar to the law of sales. It arises in every branch of the law of contracts. The problem is simply this: Does one party to a contract who has a right to rescind the contract or refuse to go on with it, and who, nevertheless, allows the party in default to continue with the contract and accepts his defective performance, thereby manifest an agreement that the performance so received shall be taken as full satisfaction of all obligations?

In the law of contracts, other than contracts to sell or sales, by the clear weight or authority this question must be answered in the negative. If a party in default on a contract is allowed to continue to perform, this is a waiver of any right of rescission or refusal to go on with the contract because of any known default that has already taken place, but the obligation of the party in default is not thereby terminated, nor his liability to pay damages for his insufficient performance. There is no reason why the rule in the law of sales should be different. When insufficient performance is received by the buyer, he should not be debarred from recovering damages because of the insufficiency, unless he has agreed to accept what has been offered him as full satisfaction of all his rights. There seems no ground for saying that the mere fact that he has taken the goods indicates such assent. * * *"

In English v. Spokane Con. Co., 57 Fed. 456, 6 C. C. A. 416, the court said:

"There has been some controversy in the courts as to the right of the purchaser to accept the goods and rely upon the warranty, some of the authorities holding that where the sale is executory, and the goods, upon arrival at the place of delivery, are found upon examination to be unsound, the purchaser must immediately return them to the vendor, or give him notice to take them back, and thereby rescind the contract, or he will be presumed to have acquiesced in the quality of the goods. But the great weight of authority, as well as reason, is now, we think, well settled that, in cases of this kind and character, if the goods upon arrival at the place of delivery are found to be unmerchantable in whole or in part, the vendee has the option either to reject them or receive them and rely upon the warranty; and, if there has been no waiver of the right, he may bring an action against the vendor to recover the damages for a breach of the warranty or set up a counterclaim for such damages in an action brought by the vendor for the purchase price of the goods."

See authorities cited therein.

In Babcock v. Trice, 18 Ill. 421, 28 Am. Dec. 560, the court held:

"He was not bound to refuse to receive the corn because some portion of it was damaged, nor was he bound to return it on discovery of the fact. He might rely upon the warranty. * * *

"It is true that the acceptance of corn under an executory contract, with opportunity of inspection at the time of delivery, without complaint, may raise a presumption that it was of the quality contemplated by the parties; but it will not preclude the party from showing and setting up the actual defect in quality and condition. * * *"

The court in a number of cases has said that, where a party purchases an article under a certain warranty which is broken, the purchaser has two remedies: (1) He can return the article within a reasonable time after learning of a breach of warranty and sue for the cancellation of the contract; (2) he can retain the article, recover the difference between the actual value of the article at the time of the purchase and what its value would have been if it had been as represented. See Spaulding v. Howard, 51 Okla. 502, 152 Pac. 107.

Under the authorities above cited, we are of the opinion that in this case a warranty implied by law that the goods were merchantable survived the acceptance thereof by the buyer.

The petition alleges that the plaintiff in error purchased of the defendant in error 750 cases of one-fourth oil, Banquet brand sardines, which sardines were to be standard sardines, and it is admitted that the plaintiff in error received 750 cases of the Banquet brand sardines; but it is disputed that the same were one-fourth oil as it is understood in the sardine trade. The proof here for the plaintiff in error shows that the sardines in question ran about four fish to the can, while, according to the testimony of the witness Armstrong who testified as an expert, it is understood in the world that oil sardines usually run about seven fish to the can, and, according to the testimony of the witness Massey, the one-fourth oil sardines generally run from five to nine fish to the can, and this witness also testified that the quantity of oil in these cans was not sufficient for quarter oil sardines. There was other testimony introduced in this case supporting the theory of the plaintiff in error that a quarter oil sardine was understood in the sardine world as containing from five to nine fish to the can, and that more oil was needed than the cans involved here contained. A careful examination of this entire evidence seems to us to present a question of fact as to whether the sardines in question were merchantable. If they were, the plaintiff in error is not entitled to recover; if they were not, the plaintiff in error should be entitled to recover whatever damages he has sustained. By the use of the term "merchantable," we mean such goods as are generally sold in the market, salable and fit for the market. There is some evidence here which would indicate that sardines such as these, as claimed by plaintiff in error, were rejected by the trade. It seems to us that this question of fact should have been passed upon by

the jury, and that the court committed an error in directing a verdict.

Under the evidence, the money in the possession of the Security National Bank was not the property of the defendant in error, and the garnishment was properly discharged.

The judgment in all matters is reversed, and this cause is remanded for a new trial.

By the Court: It is so ordered.