**ROUDEBUSH et al. v. COLONIAL SUPPLY CO.**

No. 17170—Opinion Filed · Dec. 7, 1926.

1. **Appeal and Error—Review—Conclusiveness of General Finding of Court.**

Where a case is tried to the court without a jury, a general finding in favor of one of the parties will be given the same weight as a verdict of a jury, and if there is competent evidence reasonably tending to support the same, it will not be disturbed on appeal.

2. **Same—Conflicting Evidence.**

In a law case tried to the court, and the error assigned is that the evidence is insufficient to support the judgment, the Supreme Court will not weigh conflicting evidence, but if it be found there was any evidence reasonably tending to support the judgment, it will be affirmed.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from Superior Court, Okmulgee County; J. H. Swan, Judge.

Action by Colonial Supply Company against G. B. Roudebush and W. J. Kiser. Judgment for plaintiff, and defendants appeal. Affirmed.

A. L. Emery, for plaintiffs in error.

Hummer & Foster, for defendants in error.

Opinion by RUTH, C. This action was brought by the Colonial Supply Company against G. B. Roudebush and W. J. Kiser, to recover the sum of $743.85 for one Hazard drilling line.

Defendants filed their answer and cross-petition, admitting the purchase of the 4,500-foot line; that the plaintiff guaranteed the line would do the work for which it was manufactured, but the line broke after seven days' use, and the defendants lost · their drilling tools in the hole, and that the ·line broke repeatedly while they were "fishing" for the tools; that after the tools were recovered, they again lost the tools by reason of the break in the line, and defendants were compelled to purchase a new "American line" to complete their test well. Defendants allege they owe plaintiff nothing by reason of the breach of warranty, and in their cross-petition defendants claim damages in the sum of $1,248.96, and itemize their damages aggregating this sum.

Plaintiff, for reply, denies the defective condition of the line, and alleges it inspected the line, and defendants agreed that if some third person would use the line for drilling purposes, and such third person would say the line was not defective, defendants would pay for same, and that L. G. Cosper, an experienced driller, used the line, and completed a well to the depth of 3,000 feet, and reported the line was not defective.

The cause was tried to the court, and judgment rendered for plaintiff for the amount claimed, and defendants appeal.

Defendants' brief fails to conform to rule 26 of the rules of the Supreme Court, but in the second paragraph of their brief we find the following:

"We insist that the judgment of the court is not sustained by sufficient evidence, and that the judgment of the court is contrary to law."

We assume these are the assignments of error intended, as the argument is directed solely to the foregoing statement.

In considering the questions presented, we must be guided by the following rules, laid down by this court and supported by authorities:

"(1) Where a case is tried to the court without a jury, a general finding in favor of one of the parties will be given the same weight as a verdict of a jury, and if there is competent evidence reasonably tend'ng to support the same, it will not be disturbed on appeal." J. B. Edgar Grain Co. v. Kolp, 48 Okla. 92, 149 Pac. 1096; Sinclair Refining Co. v. Keith, 97 Okla. 55, 221 Pac. 1003; Wood v. Wood, 94 Okla. 86, 221 Pac. 24; Cooper v. Long, 93 Okla. 239, 220 Pac. 610.

"(2) In a law case tried to the court, and the error assigned is that the evidence is insufficient to support the judgment, the Supreme Court will not weigh conflicting evidence but if it be found that there was any evidence reasonably tending to support the judgment, it will be affirmed." Loomer v. Walker, 59 Okla. 44, 157 Pac. 1055; Miller v. Severs, 42 Okla. 378, 141 Pac. 965; Deskin v. Rogers, 72 Okla. 274, 180 Pac. 691; Barnett v. Barnett, 78 Okla. 249, 189 Pac. 743; Turben v. Douglas, 76 Okla. 78, 183 Pac. 881; Denison v. Phipps, 87 Okla. 299, 211 Pac. 83.

The purchase of the 4,500 feet of Hazard drilling line, and the price agreed to be paid therefor, are undisputed. The Hazard line is a standard line, but there is no question about its breaking while being used by defendants, and the only question to be determined here is, What caused the break? The evidence discloses that at the time this Hazard line was put in use, the well was of a depth of between 3,700 and 3,900 feet, and the line broke about 400 feet above the tools. It broke once · after being used in drilling for a period of eight days, and once

while "fishing" for tools, after a use of seven more days. It is in evidence that at a depth of 3,400 feet, the well was cased with a "5-3/16" casing, and defendants' witnesses admit that. in a hole of this size, the line will have a tendency to chafe or wear on the sides of the hole, and considering the fact that the line broke about 400 feet above the tools, and the bottom of the hole was from 300 to 500 feet below the end of casing, it is within the realm of possibility that the line was worn or chafed approximately where the casing ended. There was no direct evidence that the line did chafe or wear, as direct evidence would have been impossible unless the l.ne had been withdrawn from the hole from time to time and an examination made. Defendants offered no proof of defects in the line, and no proof of the circumstances under which it broke, and did not produce as witnesses, the drillers using the line at the time of the break, and defendants' witnesses "cannot say what caused the break." It is further in evidence that "drilling is done by a method more like the crack of a whip. The tools are thrown at the bottom of the well: the beam catches the tools and the line stretches out; that if the drillers should drill off. the hole gets too far away from the tools to hit. it would start to 'peg leg,' and this would be hard on the line."

There was evidence of the fact that after the line broke, a representative of the manufacturers of the line took a piece of it and sent it to the factory for a test of its tensile strength and a chemical test, and no defects were discovered.

The testimony of Cosper, the expert driller who afterwards used a line supposed to be this same Hazard line and successfully drilled a hole to a depth of 2.200 feet, is not of serious moment in this case. for the reason that. assuming it was the same line, though in a shortened condition. it might be perfect as to the part used by Cosper and defective in another part. and the line, as a who'e. could be no stronger than its weakest point.

If the line afterwards tested by Cosper was not the line sold to defendants, as is insisted in defendants' brief, Cosper's evidence is valueless for any purpose, and this brings us squarely back to the question, as to what caused the break.

Under the assignment of error that the judgment is contrary to law, defendants discuss the question of implied and express warranty, citing: Nettograph Mach. Co. v. Brown et al., 28 Okla. 436, 114 Pac. 1102; Standard Sewing Mch. Co. v. New State Shirt & Overall Mfg. Co., 42 Okla. 554, 141 Pac. 1111; Wallace v. Clark & Son et al., 74 Okla. 208, 174 Pac. 557; G. M. C. Truck Co. v. Kelley, 105 Okla. 84, 231 Pac. 882; Holcomb & Hoke Mfg. Co. v. Waters et al., 109 Okla. 107, 235 Pac. 198.

That the law implies a warranty that the article sold will perform the services for which it was intended to be used, is too well settled in this state to require discussion at this time and under the facts in this case.

Defendants insist there was also an express warranty. in that at the time of the purchase of the Hazard line, defendants said to one Fisher, the agent of the plaintiff:

"I asked him (Fisher) if they would guarantee this line, and he said 'Absolutely guarantee it. not only the Hazard people, but we will stand right back of it ourselves, the Colonial people'."

In Frey v. Failes, 37 Okla. 297, 132 Pac. 342, the court said:

"In order to constitute an express warranty, no particular language is necessary. It is not required that it shall be in writing, or be made in specific terms; and it is not at all necessary that the word 'warrant' or 'warranty' shall be used. Any direct and positively affirmation of a matter of fact, as distinguished from a mere matter of opinion or judgment, made by the seller during the sale negotiations and as a part of the contract, designed by him to induce the action of the purchaser and actually relied upon by the latter in making the purchase, will be deemed to be a warranty."

Recognizing the rule of implied warranty, and even though it were admitted Fisher used the words ascribed to him, and that under the authority of Frey v. Failes, supra, there was an express warranty, the uncontroverted evidence confronts us that the line did perform, for a period of eight days, the work for which it was designed and used, and defendants testify they do not know what caused the break in the line.

Defendants having pleaded the warranty and the breach thereof, the burden of proving the breach was upon the defendants.

It is a matter of common knowledge that where a line moves in a horizontal or vertical direction, and rubs against a hard surface, the line will show the "chafing" for the full length of the contact with such hard surface, and a "break" caused alone by the line being subjected to a strain beyond its tensile strength, while such break will cause the line to "broom." or ravel, at the

point of the break, nevertheless it will not show a chafed, rubbed or worn condition, and defendants having testified they cut the line above the break and used the line for fishing for the tools, it would have been within the power of the defendants to produce portions of the line on either side of the break, and introduction of these portions of the line in evidence would have thrown some light upon the cause of the break, but the defendants having testified they did not know what caused the break, the court could not be expected to know, and the defendants having wholly failed to establish the break was caused because of a defect in the line, not occasioned by their own acts, the court was compelled to accept the most reasonable theory as to the cause of such break, and it appearing from defendants' testimony that the line would rub or wear under the conditions testified to be existent in the well, and that the line did break about 400 feet above the tools and at a point approximating the lower end of the casing, this was the only theory upon which the court, under all the evidence could rely in arriving as its judgment.

We do not deem it necessary to discuss the question of the measure of damages for a breach of implied or express warranty for the reason there could be no damages until the breach was proven.

There being evidence reasonably tending to sustain the judgment of the trial court, the same should be and is hereby affirmed.

It appearing from the record that the defendants tendered a supersedeas bond on appeal, and the surety on such bond being the U. S. Fidelity & Guaranty Company, and the plaintiff having prayed judgment against the surety in the event of an affirmance of the judgment of the trial court, it is further ordered, adjudged, and decreed that plaintiff have and recover judgment against the said surety, the U. S. Fidelity & Guaranty Company, in the sum of $743.85, with interest at the rate of six per centum per annum from the 28th day of August, 1922.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. pp. 876, 879, §2853. (2) 4 C. J. p. 884, §2855. (See under (1, 2) 2 R. C. L. p. 194: 1 R. C. L. Supp. p. 430; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 80; 6 R. C. L. Supp. p. 73.