**DOBBINS v. TEXAS CO. et al.**

No. 18243.   Opinion Filed Nov. 29, 1928.

Rehearing Denied March 26, 1929.

Johnson, McGill & Johnson, for plaintiff in error.

J. H. Hill, John R. Ramsey, B. W. Griffith, and S. H. Kauffman, for defendants in error.

TEEHEE, C. In this cause the appellant, C. W. Dobbins, and appellee, the Texas Company, occupy their relative trial positions, and will hereinafter be referred to as plaintiff and defendant, respectively.

The litigation arose out of another action brought by plaintiff against one E. H. Royer to establish a trust in a certain producing 160-acre oil and gas lease, and for an accounting of the administration of the trust property, in which cause plaintiff recovered a 75/256th part in one-half of seven-eighths of the leasehold, and a money judgment of $76,187.58, as his share in like moiety of the oil produced therefrom and sold by Royer with a lien therefor fixed on a like interest of Royer in such lease, and with foreclosure thereof and sale of the Royer interest if the money judgment be not paid in 30 days, which judgment on appeal was affirmed. That case is reported as Royer v. Dobbins, 111 Okla. 156, 239 Pac. 157, where a full statement thereof appears and need not here be reiterated except in such part as may be necessary for clarity of the cause in hand. That suit was filed on December 22. 1921, and was heard to the court on November 6 to 18, 1922. Findings of fact were filed, and judgment thereon pronounced on January 17, 1923, with the journal entry of judgment being filed on March 1, 1923.

On the day of announcement of judgment, plaintiff filed in that cause a supplemental petition in which by reference he adopted his pleadings in the case against Royer, and further alleged as follows:

"Plaintiff says that during the hearing of this cause before the court, it developed from the evidence that a large quantity of oil had been taken from the property involved in this suit, to wit: The northeast

quarter of the northeast quarter of section 27, township 4 south, range 2 west, Carter county, Okla., of which this plaintiff is the owner of a 75/256th of one-half of the oil and gas lease on said property. Plaintiff alleges that, acting with the defendant, the Texas Company, a corporation organized under the laws of Texas, but doing business in the state of Oklahoma, after having complied with the laws thereof, and the Pierce Oil Corporation, a foreign corporation doing business in the state of Oklahoma, after having complied with the laws thereof, wrongfully and unlawfully took possession of all the oil produced from said lease since October, 1919, and have converted the same to their own use and benefit without the consent of the plaintiff herein, to plaintiff's damage in the sum of $100,000, same being the value of said oil at the time of the conversion thereof."

Then follow allegations showing the manner in which control of plaintiff's property was assumed by defendant, which, in substance, were the circumstances detailed in his petition against Royer whereunder he established his trust and recovered his judgment in that case, and, further, that defendant required and exacted of Royer an indemnity bond "to protect it from any damage it might suffer by reason of paying to him the purchase price of the oil that belonged to this plaintiff, or whatever interest he might have in said property," with C. L. Anderson and Don Lacy as sureties, who have "in their possession a large amount of property belonging to * * * Royer, who is insolvent, as collateral security to protect them in said indemnity bond," and that the defendant and the other parties named in the supplemental petition were necessary parties to a full and complete determination of the cause originally brought against Royer, and thereupon prayed judgment for the sum of $100,000 against all of the defendants, and that the collateral held by the sureties on the indemnity bond be applied to any judgment obtained under his supplemental petition.

In the journal entry of judgment filed March 1, 1923, in the Royer Case subsequent to the filing of plaintiff's supplemental petition, the cause as to the parties thereby made defendants was by the court continued. On March 14, 1923, the defendant filed an answer, which, in addition to a general denial, was in the nature of a plea in estopppel of plaintiff's right of recovery against defendant constituted principally of equitable defensive matter. In this state the cause remanded pending on appeal by Royer from the judgment obtained against

him by plaintiff in the original action, which judgment was affirmed on April 7, 1925.

Subsequent to the affirmance of plaintiff's judgment against Royer, defendant, on January 4, 1926, filed an amended answer in elaboration of its equitable defenses. The matter contained in the answer principally relied on may be summarized as follows: First, a general denial; second, that plaintiff, by his election of remedies, in that he had secured judgment for his share of the proceeds of oil sales paid by defendant to Royer under an accounting of the trust property as upon contract, which was tantamount to a ratification of the sales made by Royer to defendant, had waived his right of action in tort against defendant; third, that plaintiff and Royer, during the period of time involved in this litigation, were engaged in a joint adventure or enterprise in respect to their interests in the leasehold from which the oil was produced and purchased by defendant from Royer who held the legal title, and who was permitted by plaintiff to remain in the possession thereof and exercise ownership thereover by his management of the operations of the leasehold, and his having stood by without protest or complaint with knowledge that payments for the oil so purchased from Royer would be made to him during such period, plaintiff had acquiesced in and assented to, and ratified such sales of the oil to defendant by Royer, by reason whereof plaintiff is estopped to assert defendant's liability as alleged in his supplemental petition; fourth, that defendant was a purchaser in good faith of the oil produced from said leasehold, and sold to it by Royer for which it paid full market value, the said Royer being the legal owner of record of the property and in the open and peaceful possession thereof, asserting all rights of ownership, and defendant being without notice of plaintiff's claims, it is entitled to be protected as an innocent purchaser for value: fifth, that plaintiff was barred from maintaining this suit, if not as to the same in its entirety, then to a large part of the oil purchased by defendant from Royer, the suit not having been instituted within two years from the accrual of plaintiff's cause of action, if any he has, as provided by the third subdivision of section 185, C. O. S. 1921.

Plaintiff, by reply, joined issue by denial of all new matter set up in defendant's answer, and further alleged, in substance, that defendant was charged with notice of plaintiff's interest by virtue of the record of the development contract, whereunder the lease-

hold was developed, and that as defendant required and secured from Royer an indemnity bond to protect it against payments made to Royer, and having failed to request plaintiff to execute a release or division order before payment of the proceeds of the oil sold to it by said Royer, defendant was estopped to plead in defense the equitable defenses set up in its answer.

Under a stipulation of the parties, the litigation was restricted to the liability of defendant for the oil purchased by it for the period beginning February 10, 1920, to September 15, 1922, the last stated date being the time defendant was informed of the suit brought by plaintiff against Royer. The cause was tried to the court without the intervention of a jury. The court in general terms found the issues for the defendant, and thereon rendered judgment accordingly. Of the judgment plaintiff complains.

At the threshhold, we are required to determine the character of the action, as plaintiff contends that his suit against the defendant is one in equity, and that the questions raised on appeal must be determined according to the controlling rules in equity jurisprudence. Defendant contends that the suit is one at law, notwithstanding that it was filed under the theory that it was a part of the suit brought by plaintiff against Royer, which was an equity proceeding, and therefore the questions on appeal in this cause must be governed by the rules applicable to law' actions. In Dodd-Lear Hardwood Lbr. Co. v. Gyr. 44 Ok'a. 630. 146 Pac. 16, the rule of determination is stated as follows:

"The nature of a suit, in the first instance, is to be determined by the allegations of the petition."

In that particular, the principal and material allegations of the petition, as above quoted, are in the form of the common-law action of Trover and Conversion, 2 Sedg. on Damages (9th Ed.) 944, section 492, etc.; 4 Sutherland on Damages (4th Ed.) 4206, section 1108, etc. The other specific allegations set forth the manner of the conversion. The allegations of the petition in the Royer Case, adopted by reference, supplied no necessary element not contained in the supplemental petition, so that it may be said that the supplemental petition in itself fully alleged a cause of action against defendant. Thus, by the allegations of the supplemental petition, the cause of action stated is one for the recovery of money as damages for the wrongful conversion of plaintiff's property.

By section 532, C. O. S. 1921, it is provided:

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered, as hereinafter provided."

Excepting the plea of the statute of limitations, defendant's answer raised issues of fact upon plaintiff's right of recovery, and though the principal defenses relied on as to the whole case were equitable in character, but without a demand for affirmative, equitable relief, that fact did not convert the action into a non-jury case. Gill v. Fixico, 77 Okla. 151, 187 Pac. 474. Notwithstanding the manner of filing, the action by plaintiff as against the defendant, the Texas Company, therefore was clearly an independent action at law, with the rights of the parties therein to be determined according to the rules governing a law case in respect to questions of fact raised in the appellate court. Yargee v. McMillan, 129 Okla. 48, 262 Pac. 682; Likowski v. Catlett, 130 Okla. 71, 265 Pac. 117, 57 A. L. R. 517.

Upon the merits of the appeal, plaintiff first presents the proposition that his cause of action was not barred by the statute of limitations, consideration whereof we pretermit in the view of our conclusion upon the main question raised by plaintiff, namely, the insufficiency of the evidence to sustain the judgment, to which we direct our attention As to the material facts established, there is no difference of view between the parties. The divergence of view arises upon the application of the controlling rules of law thereto. This conflict of opinion of the governing principles requires a brief narrative of the case.

The business out of which this litigation arose had its beginning in the acquisition of an existent oil and gas lease covering an 80-acre tract, which had been assigned by the original lessee to E. H. Royer. The lease bore date of March 11, 1919, with the assignment executed March 19, 1919, and acknowledged June 4, 1919, on which date the same was filed for record. The lease was developed into productive oil property under a contract dated October 8, 1919, entered into by and between Royer, W. S. Critchlow and plaintiff, as parties of the first part, and Magna Oil & Refining Company as the second party. The contract recited that the first parties were the owners of the lease with their moiety of ownership not being disclosed on the face of

the contract. The contract involved only a certain part of the original lease. It provided that, upon the drilling of five wells on such part of the lease involved by the second party at its expense, an assignment of an undivided one-half interest therein to the contractee would be effected. The drilling of further wells and the operation of productive wells were to be under the joint management and at the joint expense of the parties to the contract, with all books and accounts open to inspection to them at any time. The contract was filed for record on October 11, 1919. In October, 1919, the date of the month not being stated, Royer assigned a 94/256th interest in that part of the lease to be developed to W. S. Critchlow, one of the three of the first parties to the development contract. This assignment recited that Royer was then the owner of all rights in and incident to the property affected thereby. This assignment was filed for record on October 28, 1919.

The record of the case does not show by exact date when the wells were drilled; or the number thereof at the time defendant first purchased oil produced from the lease. The oil was purchased by defendant under a division order dated March 15, 1920, in which the parties signatory certified and guaranteed that they were the owners of all oil wells, these being described as No. 1 and up, then on the lease, and with the moiety of their interests designated in the division order. Plaintiff was not a signatory party, and as developed in his suit against Royer, plaintiff's interest was covered in Royer's part as fixed in the division order, this being designated as a 154/256th of 7-16th of the working interest in the lease. Under the terms of the division order, payments for the oil purchased were to be made on the 10th and 25th of the month. It further provided that a satisfactory abstract of the title of record, or other evidence of title, would be furnished upon demand of the defendant, and that if such evidence of title was not so furnished, or there should be a dispute concerning the title, the defendant may hold the proceeds of the oil disposed of until satisfactory indemnity be furnished to defendant. Pursuant to this provision of the division order, an indemnity bond was required of Royer before payments were made to him for that the abstract of title of record showed plaintiff as one of the parties to the development contract. The indemnity bond was dated March 27, 1920, and was delivered to the defendant on either March 29th or 30th. The first payment to Royer was made on April 6, 1920, and thereafter payments were made semi-monthly conformably to the terms of the division order, and continued until August 25, 1920, when the defendant for several months ceased to take the oil produced from the lease. Thereafter further purchases were made beginning March 18, 1921, with payments therefor continuing until September 25, 1921, which included all oil purchased by defendant to September 15, 1922.

Defendant learned of plaintiff's suit against Royer about the 1st of October, 1922, whereupon further payments to Royer were withheld. Plaintiff had filed his suit against Royer in December, 1921, after repeated requests by plaintiff that Royer assign to him his interest in the lease. Upon each request Royer had promised to so do. His first effort to secure such assignment was made immediately following the execution of the development contract at about the time of the Critchlow assignment and prior to any development of the property under the contract, and his last, in November, 1921. At the time defendant learned of the Royer suit, one of plaintiff's attorneys informed one of defendant's attorneys that the litigation did not affect defendant.

Plaintiff was well informed of the operations resultant in the production of oil from the leasehold. He permitted Royer to act in the management thereof in so far as plaintiff's interests were involved without protest or complaint to anyone whomsoever interested in the property. He knew that the oil produced from the lease would be disposed of; that the division order had been executed by the parties signatory thereto, and that the defendant had required of Royer an indemnity bond at about the time of its execution; that the oil being produced was being purchased by defendant, and that payments therefor would be and were being made to Royer in accordance with the terms of the division order of which he made no protest or complaint to the defendant. He testified expressly that he knew of these facts, and that he had told Royer that he would not tie up the oil sales by him made as he knew that the joint expenses of operation of the lease were to be paid thereout. These expenses began to accrue immediately upon the production of oil from the first well drilled. He had permitted Royer to manage the property in so far as he was concerned, as he was confident that Royer would not repudiate and defeat him out of his interest in the property.

These acts and conduct of plaintiff, as outlined, defendant contends in support of the judgment show: First, that Royer, as

plaintiff's coadventurer, was authorized to sell the oil produced and to collect the proceeds in the manner as was done; second, that his having failed to make any protest or complaint, and his having continued silent and with full knowledge of the facts, plaintiff consented to and acquiesced in the sales made by his coadventurer, Royer, and constituted ratification thereof; third, that plaintiff further confirmed the validity of the oil sales upon his election to sue his coadventurer alone as upon contract, which election precluded plaintiff from repudiating the sales so ,made; and fourth, that as defendant purchased the oil at ,market value from the legal holder of the title as evidenced by matter of record, and who was in possession and in active management and operation of the property, it is entitled to protection as a bona fide purchaser.

On the other hand, plaintiff contends that these acts and conduct on his part did not bring him within the rules of estoppel relied on by defendant for that defendant failed to show that it was without notice of plaintiff's claim of some character of interest disclosed by the record of title to the property, and that defendant, itself, is estopped from setting up its equitable defenses based thereon since it required an indemnity bond to secure itself from loss against plaintiff's claim.

The principles relied on by plaintiff in support of his contentions are well stated in Flesner v. Cooper, 62 Okla. 263, 162 Pac. 1112, to wit:

"The essential elements of an 'equitable estoppel' are: First, there must be a false representation or concealment of facts. Second, it must have been made with knowledge, actual or constructive, of the real facts. Third, the party to whom it was made must have been without knowledge, or the means of knowledge, of the real facts. Fourth, it must have been made with the intention that it should be acted upon. Fifth, the party to whom it was made must have relied on or acted upon it to his prejudice."

And in Daniel v. Tolon, 53 Okla. 667, 157 Pac. 756, to wit:

"A purchaser of lands, who buys in reliance upon the record title, is chargeable with all the notice brought to him by the records; and if the record contains matters that would put a person of ordinary prudence upon inquiry into .the nature of the title of the grantor, or of the rights and equities of a former owner, then the law charges such purchaser with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have brought home to him."

And in Winsted v. Shank, 68 Okla. 269, 173 Pac. 1041, to wit:

"Whatever is 'notice' enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it."

Plaintiff's argument in support of his contentions under these principles proceeds on, the theory of the rule as laid down in Jackson v. Twin State Oil Co., 95 Okla. 96, 218 Pac. 324, to wit:

"The doctrine of estoppel by conduct is an equitable doctrine, and is not available to a party guilty of inequitable conduct in reference to the transaction in which he invokes its application."

Under his theory of the case, plaintiff's argument summarized resolves itself into the legal proposition that defendant was fraudulently trafficking with a recreant fiduciary, for which reason defendant is not entitled to retain the fruits of the transaction in the manner had. United States v. Dunn, 268 U. S. 121, 45 Sup. Ct. 451, 69 L. Ed. 876. This presupposes that Royer was without authority in the premises, and that his acts in the sale of the oil produced from the leasehold were a wrong perpetrated upon plaintiff, in which defendant in effect participated from the fact that it was charged with notice of plaintiff's claim against which it required indemnity. If this be the case, then clearly the court erred in finding the issues for defendant, for, as was said in Pierrepont v. Barnard, 5 Barb. (N. Y.) 364: "An estoppel in pais is never allowed to be used as an instrument of fraud; but is to be resorted to solely as a means to prevent injustice—always as a shield, but never as a sword;" and that it is available only to a party who has proceeded in good faith in relation to the subject matter. Hynds v. First State Bank of Stonewall, 115 Okla. 275, 242 Pac. 861.

The principles relied on by plaintiff, it may be observed, constitute the general doctrine of an equitable estoppel, are supported by abundant authority, and, if we understand defendant's argument, are not challenged as being the basic and controlling principles thereof. In our view of the case, however, they are not here controlling, as the character of the business giving rise to the litigation has been definitely fixed as that of a joint adventure. Royer v. Dobbins, supra. In that case plaintiff then asserted his rights in the leasehold as a mem-

ber of a joint adventure, and the same were adjudicated upon that theory, by reason whereof, as to the character of the business under an elementary rule of law, he is bound thereby.

"Where a right, question or fact is distinctly put in issue and directly determined by a court of competent jurisdiction in a former suit between the same parties or their privies, the former adjudication of that fact, right or question is binding on the parties or their privies in a subsequent suit irrespective of whether the causes of action are the same." 2 Freeman on Judgments (4th Ed.) 1322, section 627, and cases cited.

The rights of the parties in this cause, therefore, are to be determined according to the rules of the law of joint adventures applicable thereto, though defendant in support of the judgment stands on all of its defenses, including that of a joint adventure, to which we now direct our attention.

In Boles v. Akers, 116 Okla. 266, 244 Pac. 182, it is held:

"While the courts do not treat a joint adventure as identical with a partnership, it is so similar in its nature and in the contractual results created thereby, that the rights as between the adventurers are governed by the same rules that govern partnerships. A joint adventure generally relates to a single transaction."

In O. K. Boiler & Welding Co. v. Minnetonka Lumber Co., 103 Okla. 226, 229 Pac. 1045, it is held:

"Each member of the joint adventure acts for himself as principal and as agent for the other members, within the general scope of the enterprise. The law of partnership applies in settlement of the questions arising among the parties and in relation to third parties. In substance, it is the law of principal and agent."

In the discussion of the point, the court said:

"While it is true at common law the courts did not recognize the relationship of coadventurer unless the elements of partnership were disclosed and proven, but in the passage of time this rule has been liberalized by the decisions of the courts. See note to Anno. Cas. 1916-A, page 1210. The rule which has now come into application through the modification of the common-law rules does not require the showing which would result ordinarily in creating a formal partnership. An undertaking on the part of two or more persons to combine their property or labor in the conduct of a particular line or general business, for joint profit, creates the status of a partnership. In the operation of a partnership affair,

each member acts as principal for himself and as agent for the other members in the general scope of the enterprise. In order for the members of a partnership to be bound by the acts of one of its members as agent, the action of the partner must be within the general purpose of the partnership. The law of principal and agent underlies the conduct of the partnership business as to questions arising among the partners, and the same rule applies between partnership and third parties. (Citing cases). The principal distinction between a partnership and a joint adventure is that the latter may relate to a single transaction. (Citing cases.) Whether a joint enterprise has been created or not may be determined from the apparent purposes and the acts and conduct of the parties who join in the undertaking. The acts and conduct of the parties engaged in the accomplishment of the apparent purposes may speak above the expressed declarations of the parties to the contrary. Fewell v. Am. Surety Co. (80 Miss. 782). After the parties have created and engaged in a joint enterprise, although it may relate to a single transaction, the law of partnership applies to the questions arising between and among the parties, and in relation to third parties. (Citing cases.) Each member of a joint enterprise represents a dual status; that of principal for himself, and as agent for the other members in the doing of those acts within the general scope of the enterprise, Senneff v. Healy (155 Iowa, 82). The act of E. J. Baker, who was a joint owner of the property, in contracting with the lumber company and builder to furnish material and to construct the buildings was equivalent to his written consent for the creditors to perfect mechanic's liens against his interest in the property. In his relation as agent, the act was binding on the other members, as the action of Baker was germane to the general purpose of the enterprise. The action of Baker in entering into the contract bound all the members of the joint adventure, whether known or unknown to the lien claimants."

As the business in which plaintiff and his coadventurer, Royer, were engaged was the development of the leasehold into productive oil property and disposal of the oil produced, which operations were by Royer conducted openly, and whereunder he obtained the market price for the oil sold, it would appear to be undoubted that plaintiff's coadventurer was thus acting within the scope of his authority, and that his operations in their entirety were germane to the general purpose of the enterprise.

As there appeared to be no limitation, either in the lease or development contract, upon the power of plaintiff's coadventurer in the management of the property in so for as it affected plaintiff's interests, and

there being no evidence which shows that the sales of oil were not fairly made, defendant's contentions in this connection find further support in the rule that,

"The members of a joint adventure have the power and interest of partners, as to the disposition of the property involved in the enterprise, and, if the power to sell is not limited by the contract between or amongst them, a sale made by either or any member in good faith binds both or all of them." 33 C. J. 859, section 59.

As was said in Marston v. Gould, 69 N. Y. 220, "he (plaintiff's coadventurer) might if authorized sell in the usual way, and if the sale was properly, fairly and honestly made, and in the usual manner, the plaintiff was bound by it."

Under these principles of the controlling law, therefore, defendant was justified in proceeding on the theory that plaintiff's coadventurer, Royer, had the necessary authority to deal for whomsoever was interested with him, from the fact that he was the legal titleholder of record of the property and in the active management of the joint enterprise, and was operating the same without protest or complaint by plaintiff, who knew of all the facts in relation thereto with his acts and conduct constituting a continuing affirmation of the dealings had by Royer with defendant.

Under this conclusion of the cause, the point urged by plaintiff that defendant was estopped to rely on any of its defenses interposed because of its having been indemnified against plaintiff's claims, which, in effect, challenged defendant's good faith in the transactions had, loses its significance and force, as it but indicated the exercise of a high degree of prudence, and is a practice not unusual in the oil industry with which plaintiff was familiar, and which often arises where there may appear of record some indication of a claim by others disconnected from the chain of title as in this case. In any view, it cannot be of avail to plaintiff, as it was immaterial that defendant was charged with notice (O. K. Boiler & Welding Co. v. Minnetonka Lumber Co., supra), for "it is a well-settled rule that if the owner expressly or impliedly assents to, or ratifies, the taking, use, or disposition of his property, he cannot recover for a conversion thereof." Dodd-Lear Hardwood Lbr. Co. v. Gyr, supra; Mason v. Nibel, 129 Okla. 7, 263 Pac. 121.

Under the record as we find it, therefore, we are of the opinion that the judgment of the district court upon the issues of fact is amply sustained by the evidence, by reason whereof, under a well-established rule (Barnett v. Hentges, 111 Okla. 91, 238 Pac. 188; Roudebush v. Colonial Supply Co., 120 Okla. 292, 251 Pac. 474; Russell v. Lennox Furnace Co., 136 Okla. 249, the same is hereby affirmed.

BENNETT, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.